[No. 85091-7. En Banc.]
Argued June 14, 2012. Decided August 23, 2012.

*In the Matter of the Personal Restraint of* RICHARD J. DYER,
*Petitioner.*

*David P. Zuckerman*, for petitioner.

*Robert M. McKenna, Attorney General, Timothy N. Lang, Senior Counsel*, and *Gregory J. Rosen, Assistant*, for respondent.

¶1 FAIRHURST, J. — Richard J. Dyer is a convicted rapist who denies his guilt and is therefore ineligible for sex offender treatment. He is currently serving a maximum term of life in prison. Though Dyer has a history of good behavior while in prison, the Indeterminate Sentence Review Board (ISRB) found Dyer unparolable for the sixth time and extended his minimum term another 60 months. In doing so, the ISRB considered Dyer's lack of sex offender treatment, along with additional evidence, and concluded he was not completely rehabilitated. Dyer filed a personal restraint petition (PRP) directly with this court, claiming the ISRB abused its discretion. The ISRB's highest priority is public safety. We affirm the decision of the ISRB.

## I. FACTS AND PROCEDURAL HISTORY

¶2 Dyer was convicted by a jury in 1982 of two counts of first degree rape of two women, *Ms. A* and *Ms. B*. The

convictions were affirmed on direct appeal. He has filed numerous PRPs in this court challenging multiple determinations that he is not parolable. In dismissing his most recent PRP, we summarized the underlying facts of Dyer's crimes as follows:

> On January 27, 1980, *Ms. A* accepted a ride from two men in downtown Bremerton at 2:30 a.m. *Ms. A* sat in the front seat between the driver, whom she later identified as Dyer, and a second man. When she realized Dyer was not driving to the designated destination, she attempted to grab the wheel and stomp on the brakes. Dyer forced her into the backseat where he subdued her with punches to the stomach. The second man drove the car to a remote location where Dyer undressed *Ms. A*. After the second man declined, Dyer raped *Ms. A*. Dyer then bound *Ms. A* with rope and held her to the rear floorboard while she was still naked.

> The second man drove to a residence. Once inside, Dyer led *Ms. A* to a bedroom where he tied her to a bed on her back. Dyer gagged her with cotton. The men also taped cotton over her eyes. The second man quickly raped *Ms. A* and was not seen or heard by her thereafter. Dyer applied contraceptive foam to *Ms. A* and proceeded to rape her eight times throughout the night. At one point, Dyer flipped her from her back to her stomach and raped her in the new position. Twice she was untied and forced to bathe. In the morning, Dyer washed *Ms. A*'s clothes, bathed, and dressed her. After rebinding her, Dyer drove *Ms. A* into the woods and released her.

> Later that year, two men offered a ride to another woman, *Ms. B*, in downtown Bremerton around 11:00 p.m. *Ms. B* twice refused the offer while walking her dog. The car left but shortly reappeared and *Ms. B* was forced inside. En route to their destination, the driver who *Ms. B* later identified as Dyer paused to tape cotton balls over *Ms. B*'s eyes.

> The two men took *Ms. B* to a residence. Once inside, *Ms. B* was undressed and tied to a bed. After the second man left, Dyer applied contraceptive foam to *Ms. B* and raped her repeatedly. At one point, Dyer flipped her from her back to her stomach and raped her in the new position. Dyer forced *Ms. B* to shower with him. In the morning, he washed *Ms. B*'s clothes,

bathed, and dressed her. He then drove *Ms. B* to a park and released her. Prior to leaving, Dyer gave *Ms. B* a wristwatch that was later identified as the wristwatch *Ms. A* lost during her struggle in Dyer's car.[1]

*In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 281-82, 189 P.3d 759 (2008) (*Dyer* II).

¶3 The sentencing court imposed a maximum term of life imprisonment for each count, with the sentences running concurrently. In a letter to the ISRB, the trial judge recommended that Dyer "should be held in custody until the [ISRB] is absolutely sure that he will not reoffend or until the end of his natural life whichever should first occur. A lengthy minimum is appropriate." Resp. of ISRB, Ex. 4, at 2. The prosecuting attorney recommended a 50 year (600 months) minimum sentence. Dyer's minimum sentence was originally set by the ISRB at 600 months for each count. After the adoption of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the ISRB reduced Dyer's minimum sentence to 240 months for each count.[2] The minimum term exceeded what would have been the standard sentencing range under the SRA (63-88 months). The ISRB justified its decision based on the trial judge's and the

---

[1] Dyer was also convicted of a third count of first degree rape, along with unlawful imprisonment and first degree burglary. Each of those counts involved his former wife, *Ms. W. Ms. W* alleged she was sleeping in her home when Dyer awoke her, taped her hands, and raped her. He then dressed her and drove her to a remote location with her hands and ankles bound. He took along a shovel and blanket. *Ms. W* alleged Dyer complained about the money she was requesting in their divorce proceedings. She convinced him to take her home, where he raped her again and forced her to take a shower. The Court of Appeals, however, reversed these convictions and remanded for a new trial because the trial court erroneously denied Dyer's motion to sever. The State never retried Dyer on the counts involving *Ms. W.*

[2] Under our former indeterminate sentencing system, a defendant's maximum sentence was determined by the trial court with certain statutory exceptions. RCW 9.95.010, .011. The Board of Prison Terms and Paroles (now the ISRB) would set the defendant's minimum sentence. RCW 9.95.040, .052; *see In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 772 n.1, 92 P.3d 221 (2004). The mandatory minimum sentence established the date for the ISRB to review the prisoner's parolability. *Id.* The SRA superseded the indeterminate sentencing system, but the former sentencing system still applies to offenders, like Dyer, whose crimes were committed before July 1, 1984.

prosecuting attorney's recommendations and the deliberate cruelty manifested by Dyer's crimes.

¶4 Since his incarceration, the ISRB has determined Dyer not parolable and extended his minimum term six times. In *Dyer* II, we chronicled Dyer's history with the ISRB in pertinent part:

> In 1994, the ISRB found Dyer not parolable based, in part, on a 1993 psychological evaluation that found Dyer's risk of reoffense was "very high" and his depth of sexual deviancy was "high." Resp. of ISRB to PRP, App. 5, at 3. In 1995, the ISRB found Dyer not parolable and added 60 months to his minimum term. The ISRB based its decision in part on a 1994 psychological evaluation diagnosing Dyer with posttraumatic stress disorder . . . and sexual sadism. It concluded, "[w]ithout treatment, the risk of reoffense remains high." *Id*. App. 6, at 3. The ISRB noted that "Mr. Dyer is an untreated, convicted rapist who denies his culpability and is therefore not amenable or receptive to treatment." *Id*. In 1998, the ISRB again found Dyer not parolable and added 60 months to his minimum term.
>
> . . . .
>
> In 2002, the ISRB again found Dyer not parolable and added 60 months to his minimum term. The ISRB stated, "A central difficulty for the Board is that Mr. Dyer remains an untreated sex offender." Resp. of ISRB to PRP, App. 11, at 3. The ISRB noted that [the Department of Corrections'] sex offender treatment program (SOTP) requires "full candor" and Dyer was not eligible for SOTP because he continued to maintain his innocence. *Id*.

*Dyer* II, 164 Wn.2d at 282-83 (second alteration in original).

¶5 Following the 2002 denial of parole, we remanded Dyer's case to the ISRB for a new parolability hearing because it improperly relied on unsupported notions that Dyer manipulated the psychological evaluations. *In re Pers. Restraint of Dyer*, 157 Wn.2d 358, 368-69, 139 P.3d 320 (2006). We ordered the ISRB on remand to make its determination based on the evidence and testimony presented, and not on speculation and conjecture. *Id*. at 369.

The ISRB subsequently conducted another hearing in 2006 and determined Dyer did not meet his burden to show he was a fit subject for release. Dyer followed with another PRP, challenging that fifth denial of parole. We rejected his challenge and affirmed the ISRB's decision, holding it properly relied on the objective fact that Dyer remained an untreated sex offender and failed to demonstrate his complete rehabilitation. *Dyer* II, 164 Wn.2d at 288.

¶6 The ISRB conducted Dyer's sixth and most recent parolability hearing in 2010. In its written decision, the ISRB denied parole and extended Dyer's minimum term by 60 months, correctly noting that "[l]ittle has changed since [it] last saw Mr. Dyer." PRP, Ex. N (decision) at 7. Dyer continues to deny culpability for his crimes, which prevents him from obtaining the sex offender treatment the ISRB deems necessary for his full rehabilitation. As with his previous hearings, Dyer stood before the ISRB as an untreated sex offender. The ISRB also considered additional evidence—Dyer's lack of treatment, his behavioral history as an inmate,[3] his in-person statement to the ISRB, letters of support and/or concerns sent to the ISRB, the nature of his crimes, and multiple psychological evaluations conducted over the course of his incarceration. Nearly all of the evidence was unchanged since his 2006 hearing.

¶7 One new consideration was a recent psychological evaluation provided by the Department of Corrections (DOC) and prepared by Dr. Patricia Pereira. Dr. Pereira's evaluation scored Dyer as high on the psychopathy scale and assessed him as a high risk for violence and reoffending. The ISRB acknowledged that Dr. Pereira's report conflicted with previous psychological evaluations in some respects but also that it was consistent with previous

---

[3] Dyer presented behavioral problems in the early years of his incarceration but appears to have exhibited exemplary behavior since. He is employed, has received no infractions, has maintained relationships with his current (and third) wife and children, and has participated in other treatment programs—for example, classes to address posttraumatic stress disorder, which he believes he suffers as a result of his combat experience during the Vietnam War.

evaluations in other respects. Dr. Pereira also incorrectly listed Dyer's age as 51, when in fact he was 60 at the time of evaluation. During the hearing, one of the ISRB members commented:

> We recognize that there are differences in psychological evaluations. We look at all of them as one piece of information but not giving it any specific weight over the other one. These are clinical impressions for the most part by a variety of different people that have looked at this case. And from my perspective to get too far down that road[4] might take us in a direction that would give it more weight than it deserves in terms of our actual decision making.

PRP, Ex. N (transcript) at 14-15.

¶8 Recognizing its statutory duty to prioritize public safety, the ISRB determined that Dyer should not be paroled. In a nine page written decision, the ISRB concluded, "In this case, the nature of Mr. Dyer's offenses coupled with his lack of treatment and indications of high psychopathy create considerable concerns about public safety should he be released." *Id*. (decision) at 8. Dyer filed the present PRP directly with this court, claiming the ISRB abused its discretion in denying him parole. We retained his PRP for a decision on the merits, *see* RAP 16.5(b), and allowed oral argument.

¶9 We affirm the ISRB's decision.

## II. ISSUE

¶10 Did the ISRB abuse its discretion when it determined Dyer should not be paroled?

## III. ANALYSIS

¶11 To succeed on a PRP, the petitioner must prove unlawful restraint. RAP 16.4(c); *In re Pers. Restraint of*

---

[4] The phrase "too far down that road" appears to refer to Dyer's attorney's offer to provide yet another psychological assessment performed by his retained psychologist, Dr. Brett Trowbridge. *See* PRP, Ex. N (transcript) at 14.

*Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994). Dyer claims he is unlawfully restrained because the ISRB abused its discretion by finding him unparolable and setting a new minimum sentence.

A. Standard of Review

■ ■ ¶12 An ISRB decision setting a new minimum term is reviewed for an abuse of discretion. *In re Pers. Restraint of Locklear*, 118 Wn.2d 409, 418, 823 P.2d 1078 (1992). We approach such decisions with substantial deference as we have repeatedly emphasized that "the courts are *not* a super [ISRB] and will not interfere with a[n ISRB] determination in this area unless the [ISRB] is first shown to have *abused its discretion* in setting a prisoner's discretionary minimum term. In short, the courts will not substitute their discretion for that of the [ISRB]." *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988) (footnote omitted); *In re Pers. Restraint of Ecklund*, 139 Wn.2d 166, 170, 985 P.2d 342 (1999). An abuse of discretion may be found where the ISRB fails to follow its own procedural rules for parolability hearings or where the ISRB bases its decision on speculation and conjecture only. *Dyer* II, 164 Wn.2d at 286. The petitioner bears the burden to prove the ISRB abused its discretion. *In re Pers. Restraint of Addleman*, 151 Wn.2d 769, 776, 92 P.3d 221 (2004).

B. Dyer Fails To Prove the ISRB Abused Its Discretion by Denying Parole

■ ¶13 Inmates have no right to parole. *January v. Porter*, 75 Wn.2d 768, 774, 453 P.2d 876 (1969); *see also In re Pers. Restraint of Ayers*, 105 Wn.2d 161, 164, 713 P.2d 88 (1986) (" 'There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.' " (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979))). Rather, parole is a

"privilege conferred as an act of grace by the state through its own administrative agency." *Porter*, 75 Wn.2d at 774. We have long recognized that

> although releasing a convicted felon on parole may be beneficent and rehabilitative and in the long run produce a genuine social benefit, it is also a risky business. The parole may turn loose upon society individuals of the most depraved, sadistic, cruel and ruthless character who may accept parole with no genuine resolve for rehabilitation nor to observe the laws and customs promulgated by the democratic society, which in the process of self-government granted the parole. Thus, recognizing the risky nature of parole as well as its beneficent qualities, the *courts have universally held that the granting or denial of parole by the [ISRB] rests exclusively within the discretion of the [ISRB]*.

*Id.* (emphasis added).

¶14 A prisoner's minimum term is necessarily extended when the ISRB determines the prisoner is not parolable. *Ecklund*, 139 Wn.2d at 174. And the prisoner is "subject entirely to the discretion of the [ISRB], *which may parole him now or never*." *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 196, 814 P.2d 635 (1991) (emphasis added).

¶15 Public safety is the "paramount" concern in making parolability decisions. *Dyer II*, 164 Wn.2d at 297. Although the ISRB is endowed with broad discretion, it is statutorily *mandated* to "give public safety considerations the highest priority when making all discretionary decisions." RCW 9.95.009(3). The ISRB is also *prohibited* from releasing a prisoner prior to the expiration of his or her maximum term "unless in its opinion his or her *rehabilitation has been complete* and he or she is a fit subject for release." RCW 9.95.100 (emphasis added). Finally, the ISRB has a duty to "thoroughly inform itself as to the facts of [the] convicted person's crime." RCW 9.95.170.

¶16 Dyer argues the ISRB abused its discretion by basing its denial, again, on his lack of treatment. He also claims the ISRB inappropriately relied on an "erroneous"

psychological evaluation and "improper" recommendations from the trial judge and prosecuting attorney. PRP at 20. Finally, Dyer briefly asserts that his denial violated the doctrine of unconstitutional conditions and that the ISRB violated an alleged contract to release him. Dyer's contentions are little more than a relitigation of his claims in *Dyer* II. The ISRB did not abuse its discretion in finding Dyer unparolable. The written decision and hearing transcript reveal a careful, deliberate, and thoughtful evaluation of Dyer's parolability based on a myriad of relevant information.

### 1. *Failure to complete sex offender treatment*

¶17 First, Dyer continues to deny responsibility for his crimes, which prevents him from obtaining the proper sex offender treatment. We have endorsed the position that " 'the first step toward rehabilitation is the offender's recognition that he was at fault.' " *Dyer* II, 164 Wn.2d at 288 (internal quotation marks omitted) (quoting *Ecklund*, 139 Wn.2d at 176); *see also Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir. 1969) ("It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault."). It is accordingly "settled law" that "the ISRB may base its decision to deny parole, in part, upon the fact that the offender refuses treatment that requires him or her to take responsibility for criminal behavior." *Dyer* II, 164 Wn.2d at 288.

¶18 *In Ecklund*, the ISRB denied parole based, in part, on Ecklund's "failure to confront guilt" for his murder conviction. 139 Wn.2d at 176. Similar to Dyer, Ecklund participated in various welfare programs and had no history of behavior problems while incarcerated. *Id.* at 169. Nevertheless, his unparolability was supported by his denial of guilt, his minimization of his problems, and the events surrounding his crime. *Id.* at 176-77. The ISRB considered his denial "as a fact bearing on the question of whether he had been rehabilitated and presents a threat to

community safety." *Id.* at 176. We held this was appropriate and that in light of the public safety priority, it was not an abuse of the ISRB's discretion to deny Ecklund parole based on the conclusion he was not completely rehabilitated. *Id.* at 177. *Dyer* II reinforced that the ISRB may consider an offender's lack of sex offender treatment in determining whether he or she is parolable. 164 Wn.2d at 288. This is appropriate even where the necessary treatment program requires the offender to first take responsibility for criminal behavior. *Id.*

¶19 Dyer's circumstances in *Dyer* II are not meaningfully different from his circumstances today. It is irrefutable that he remains an untreated sex offender. Sex offender treatment is not a cure for sex offenders. But the ISRB determined that Dyer, without treatment, remains unable to identify or mitigate the behaviors that directly resulted in his incarceration and remains at risk to reoffend if he is released in the community. The ISRB is statutorily prohibited from releasing an offender until he or she is completely rehabilitated. RCW 9.95.100. The lack of treatment is an appropriate consideration under *Ecklund* and *Dyer* II and supports the ISRB's decision to deny parole. Dyer's challenge to this consideration has already been considered and squarely rejected by this court. The ISRB did not abuse its discretion.

### 2. *Dr. Pereira's psychological evaluation*

¶20 Second, Dyer's most recent psychological evaluation, performed by Dr. Pereira, also weighs in favor of denying parole. The evaluation scored Dyer as high on the psychopathy scale and assessed him as a high risk for violence and reoffending. Dr. Pereira's evaluation explained that individuals with Dyer's psychological profile "may minimize or deny problems" and "may be quite disturbed psychologically, but may have little awareness of it." PRP, Ex. U at 8. Such offenders may also "act out in a sexual or aggressive manner with little apparent attention to or

understanding of what they are doing." *Id*. "Underneath a veneer of almost exquisite correctness" are accumulated feelings of resentment, and "a small trigger can lead them to explode into a highly rationalized outburst." *Id*.

¶21 Dyer disagrees with the evaluation. He suggests that Dr. Pereira's scoring is faulty and points to two previous evaluations that found him to be a lower risk to reoffend. He also relies on the opinion of his retained psychologist, Dr. Brett Trowbridge, whose posthearing evaluation resulted in a more favorable assessment. Dyer also highlights internal inaccuracies, like the misstatement of his age,[5] and argues the ISRB abused its discretion because "Dr. Pereira's report is not the sort of reliable, objective evidence on which the ISRB may base a decision." Pet'r's Suppl. Br. at 14.

¶22 Although Dr. Pereira's risk assessment contrasts somewhat with two other evaluations, it is nevertheless consistent with two earlier evaluations that assessed Dyer as a high risk to reoffend. The evaluation by Dr. Trowbridge was not before the ISRB, nor was it necessary.[6] As the ISRB

---

[5] Dyer claims the age misstatement is relevant because some research suggests that the older a sex offender is, the less likely he is to reoffend. However, there is no indication Dyer's listed age affected Dr. Pereira's psychological assessment.

[6] Dyer filed a motion to supplement the record under RAP 9.11, asking this court to consider the Trowbridge report. We deny the motion.

First, the ISRB was under no obligation to consider psychological evaluations privately financed by an inmate. *See* WAC 381-40-070(5) (the ISRB may request a current psychological report that "shall be provided by the department of corrections"). It would be unreasonable to review the ISRB's decision by considering documents outside of the record that it had no obligation to consider. Second, the report in question was not even completed until after the parole hearing. At the time of the hearing, Dr. Trowbridge had merely reviewed the court records without personally interviewing Dyer. We will not allow Dyer to submit materials that were not presented at or prepared in advance of his hearing. Third, Dr. Trowbridge's report is unnecessary. The ISRB had several conflicting psychological evaluations provided by the DOC before it for consideration. In response to the ISRB's questioning, Dyer's attorney even agreed, stating, "My feeling was that [Dr. Trowbridge's evaluation] was unnecessary in view of the fact that two prior DOC psychologists had given very positive analyses and that we could so easily show that Dr. Pereira's assessment was just based on a misunderstanding of the facts." PRP, Ex. N (transcript) at 14. The Trowbridge report is duplicative of Dyer's evaluation from 2006 in that they both conclude he is a low risk to reoffend. It

explicitly acknowledged, the psychological evaluations are merely "clinical impressions for the most part by a variety of different people," and no single assessment is given "any specific weight over [another]." PRP, Ex. N (transcript) at 14. In other words, the ISRB was aware of the conflicting reports and considered them all as "one piece of information." *Id.* Given the varying assessments, the ISRB explained it would not rely heavily on any given conclusion. However, the ISRB could not ignore Dyer's most recent evaluation. In fact, it was statutorily required to consider it as evidence bearing on the potential threat to public safety. And irrespective of Dyer's attacks on Dr. Pereira's scoring and conclusions, we affirmed the ISRB's denial of parole in *Dyer* II where the most recent evaluation was more favorable to Dyer. We cannot say the ISRB abused its discretion by considering Dr. Pereira's evaluation in making its parolability decision.

### 3. *Sentencing recommendations*

¶23 Third, the ISRB properly relied on the sentencing recommendations of the trial judge and prosecuting attorney. When making decisions regarding duration of confinement and parole release, the ISRB must consider the sentencing recommendations of the trial judge and prosecuting attorney. RCW 9.95.009(2). The trial judge in Dyer's case recommended that he "should be held in custody until the [ISRB] is absolutely sure that he will not reoffend or until the end of his natural life." Resp. of ISRB, Ex. 4, at 2. And the prosecuting attorney recommended a 50 year (600 months) minimum sentence. It appears Dyer has now served approximately 360 months in prison. Dyer complains the recommendations should not be considered because they were made before his third rape conviction was reversed and remanded. However, this argument ignores

would have added little, if anything, to the parolability hearing, and the ISRB acted appropriately in declining the report. It is likewise unnecessary to fairly resolve the issue on review. RAP 9.11 does not warrant Dyer's request to supplement the record.

the fact that his judgment and sentence lists his maximum term as life imprisonment for *each* of the three rape counts *separately*. There is no reason to infer that the minimum term recommendations from the sentencing judge or prosecutor would be any different absent the third rape count. Consideration of the recommendations was not an abuse of discretion.

¶24 Because Dyer indirectly complains within this context that his extended minimum sentence deviates from the SRA, we also note that the ISRB fulfilled its statutory obligation to "consider the purposes, standards, and sentencing ranges" of the SRA. RCW 9.95.009(2). The ISRB need not make decisions precisely congruent with the SRA. *Id.*; *Addleman*, 151 Wn.2d at 775. There need be only an "attempt to make decisions *reasonably consistent*" with the SRA. RCW 9.95.009(2) (emphasis added). We have underscored this principle by declaring the duty to not release an unrehabilitated prisoner "trumps" the duty to attempt consistency with the SRA. *Addleman*, 151 Wn.2d at 775; *Dyer* II, 164 Wn.2d at 289. Further, a sentence term may be set outside the relevant standard SRA range so long as the ISRB sets forth adequate written reasons for so doing. RCW 9.95.009(2). Because Dyer's minimum term deviates from the SRA, the ISRB must provide adequate written reasons for the deviation. It did so in this case. Examples of adequate reasons to deny parole include, but are not limited to, the inmate's "[a]ctive refusal to participate in [an] available program or resources designed to assist an offender to reduce the risk of reoffense" and "[e]vidence that an inmate presents a substantial danger to the community if released." WAC 381-60-160(1), (5). The ISRB properly considered Dyer's refusal to participate in sex offender treatment, as well as the psychological evaluations indicating his high risk to reoffend. These are adequate reasons for the deviation, and therefore the ISRB did not abuse its discretion by extending Dyer's minimum sentence by 60 months.

### 4. *Doctrine of unconstitutional conditions*

¶25 Fourth, the ISRB decision did not violate the doctrine of unconstitutional conditions. Dyer offers little in the form of argument or briefing but merely parrots what Justice Sanders first suggested in his dissent in *Dyer* II. *See* 164 Wn.2d at 308-10 (Sanders, J., dissenting). The doctrine of unconstitutional conditions provides that the government cannot condition the receipt of a government benefit on waiver of a constitutionally protected right. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); *see, e.g., United States v. Scott*, 450 F.3d 863, 866-67 (9th Cir. 2006) (violation of the doctrine where defendant charged with drug possession was released by trial court on condition that he consent to random drug testing and searches of his home). It functions to ensure that the government may not indirectly accomplish a restriction on constitutional rights that it could not restrict directly. *Perry*, 408 U.S. at 597.

¶26 The doctrine is inapplicable, and the claim continues to be meritless. The ISRB is not conditioning Dyer's parole on his admission of guilt or even his completion of sex offender treatment. We said in *Ecklund* that it would be inappropriate for the ISRB "to base an exceptional minimum term *solely* on [the offender's] refusal to admit that he was guilty of the offense which led to his sentence to prison." 139 Wn.2d at 176 (emphasis added). It is nevertheless justified, and in fact necessary, to consider the denial and consequential lack of treatment "as a fact bearing on the question of whether [the offender] had been rehabilitated and presents a threat to community safety." *Id*. Dyer's lack of treatment was a significant consideration, but it was not necessarily determinative. It was one fact, of many, that the ISRB was required to consider. There is no condition of release being mandated. Furthermore, even if admission or treatment were so called conditions, neither would constitute a waiver of a constitutionally protected right because

inmates have no liberty interest in being released prior to serving their maximum sentence. *Ayers*, 105 Wn.2d at 164-66; *see also Ecklund*, 139 Wn.2d at 172-73 (consideration of prisoner's denial of guilt does not violate prisoner's right against self-incrimination). There is no basis to claim the ISRB is conditioning the privilege of parole on Dyer's waiver of a constitutional right. The ISRB's decision did not violate the doctrine of unconstitutional conditions.

### 5. *Alleged contract*

¶27 Finally, Dyer's allegation that the ISRB agreed to release him is misguided. He bases this allegation on a PRP he filed with the Court of Appeals in 1986 and the ISRB's response thereto. The PRP asked the court to reset his minimum term from 600 months in a manner reasonably consistent with the newly adopted SRA. The PRP added, "If [Dyer] has served sufficient time to meet that minimum, he should be released immediately." PRP, Ex. C at 11. In response, the ISRB agreed that it was "appropriate to rescore [Dyer's] minimum duration of confinement in view of the purposes, standards, and sentencing ranges adopted pursuant to [the SRA] and the minimum term recommendations of the sentencing judge and prosecuting attorney." PRP, Ex. D at 3. The ISRB therefore argued the PRP should be dismissed because it would "provide all relief requested by [Dyer]." *Id*. The ISRB subsequently reset his minimum term at 240 months.

¶28 Regardless of the alleged agreement, Dyer's argument fails because the ISRB cannot agree to release Dyer prior to his complete rehabilitation. RCW 9.95.100. Dyer could not have been released simply because he served his reset minimum term of 240 months. As we said in *Cashaw*:

> An inmate is not automatically released upon serving the minimum sentence, less good-time credits. The [ISRB] cannot release an inmate, regardless of the status of the minimum term, until either the [ISRB] determines the inmate has been

rehabilitated (and is otherwise fit for release) or the maximum sentence has been served. . . . [T]he minimum term . . . only establishes a date when the inmate becomes eligible to be *considered* for parole.

123 Wn.2d at 143. Even if it was possible to agree to his release, the ISRB did not do so in its response to Dyer's PRP. The response merely stipulates to the resetting of Dyer's minimum term, which subsequently occurred. Dyer's argument is baseless. The ISRB did not and could not agree to release him in derogation of its statutory duties.

¶29 The ISRB's written decision does not evidence an abuse of discretion. To the contrary, the ISRB carefully considered a myriad of evidence and based its denial on several factors, including Dyer's failure to complete sex offender treatment, the most recent psychological evaluation assessing him as a high risk to reoffend, the trial court's and prosecuting attorney's recommendations, Dyer's in-person statement, and the underlying facts leading to his rape convictions. These considerations were weighed against other evidence more favorable to Dyer and in light of the ISRB's "highest priority" to ensure public safety. RCW 9.95.009(3). The ISRB is in a superior position than is this court to familiarize itself with the character of Dyer and the threat he may pose to society. Though we do not review parole decisions with a rubber stamp of approval, the ISRB in this instance fulfilled all of its statutory duties in evaluating Dyer's parolability. We will not simply substitute our judgment for the ISRB's.

## IV. CONCLUSION

¶30 We affirm the ISRB because it did not abuse its discretion in denying parole to Dyer, an untreated sex offender.

Madsen, C.J., and Owens, J.M. Johnson, Stephens, Wiggins, and González, JJ., concur.

¶31 CHAMBERS, J. (dissenting) — Richard J. Dyer will likely die in prison. He will die there, in no small part, because he maintains his innocence. This should trouble all of us since the Innocence Project has exonerated hundreds of innocent men and women who were wrongfully convicted. *See State v. Riofta,* 166 Wn.2d 358, 377, 209 P.3d 467 (2009) (Chambers, J., concurring in dissent) (citing Sophia S. Chang, Note, *Protecting the Innocent: Post-Conviction DNA Exoneration,* 36 HASTINGS CONST. L.Q. 285, 289 (2009)). Because of the work of the Innocence Project, we know innocent men and women are convicted by good juries, good judges, and honest witnesses.

¶32 Whether he is guilty or innocent should not be the issue; the issue is whether any person convicted of a crime has the right to continue to assert his innocence post-conviction without retribution. The fact that Dyer would have a chance of parole if he was guilty and admitted it, and effectively no chance if he asserts his innocence, troubles me deeply, especially given that he has already served almost five times the mid-standard-range sentence for the crimes. *See* Pers. Restraint Pet., Ex. K at 1.

¶33 I am not without sympathy for the Indeterminate Sentencing Review Board (Board) that despite this court's strong suggestions to the contrary, *see In re Pers. Restraint of Dyer,* 157 Wn.2d 358, 139 P.3d 320 (2006), has steadfastly refused to grant Dyer parole. Its members clearly care about discharging their duties carefully, and the law does not permit them to release Dyer until they conclude his "rehabilitation has been complete." RCW 9.95.100. Many believe that there can be no rehabilitation without treatment, and before treatment can be effective, one must accept the need for treatment. But Dyer has participated in treatment programs when he has been permitted to do so, and I believe he has the constitutional right to maintain his innocence. The Board cannot exercise prudence and judgment by blindly enforcing a rigid code. In a sense, the Board has tied its own hands; it is caught in a Catch-22 by a rule

of its own making, which prevents it from performing its job in a more meaningful, thoughtful, and judicious way.

¶34 But this court's hands are not tied. I would order Dyer's immediate release. If the State truly believes he is a danger, it would have an opportunity to plead and prove its case to a jury in a sexually violent predator petition under chapter 71.09 RCW.

¶35 For these reasons, and for the reasons expressed by Justice Sanders the last time Dyer petitioned this court for relief, *see In re Pers. Restraint of Dyer*, 164 Wn.2d 274, 297, 189 P.3d 759 (2008), I respectfully dissent.

C. JOHNSON, J., concurs with CHAMBERS, J.