## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>JOSEPH ALLEN CAMPBELL,<br><br>                      Petitioner. | No.  57303-2-II<br><br>PUBLISHED OPINION |

LEE, J. — The Indeterminate Sentence Review Board (ISRB) revoked Joseph A. Campbell's community custody and returned him to prison.  Campbell filed this personal restraint petition (PRP), alleging that he is under unlawful restraint due to the ISRB's order revoking his community custody.  Campbell argues that the ISRB abused its discretion by failing to follow its own procedural rules regarding dismissing certain violations without prejudice.  Campbell also makes several claims that his procedural due process rights were violated.

We hold that the ISRB did not abuse its discretion and Campbell's procedural due process rights were not violated.  Accordingly, we deny Campbell's PRP.

## FACTS

Campbell pleaded guilty to second degree rape of a child in 2003.  The sentencing judge imposed a special sex offender sentencing alternative.  The trial court later revoked the sentencing alternative and imposed an indeterminate sentence of 125 months to life.  The ISRB released

No. 57303-2-II

Campbell from total confinement in 2017, and Campbell began serving a term of community custody under the jurisdiction of the ISRB.[1]

While on community custody, Campbell was booked into jail for third degree malicious mischief—domestic violence, interfering with reporting domestic violence, and two counts of possession of a stolen vehicle. The criminal charges related to incidents involving Krystle Vian, Campbell's girlfriend.

Campbell was released from jail the next day. Campbell did not inform his community corrections officer (CCO), Brenden Stelter, about the arrest or release.

Stelter received information from the Clark County Jail regarding Campbell's arrest. Stelter called Vian and spoke with her regarding the incidents. Vian told Stelter that Campbell had become verbally abusive to her and threatened her with a knife. Vian called 911 during the altercation, and Campbell grew angry and broke her phone. Law enforcement responded and found stolen property at the residence including two motorcycles, tools, methamphetamine, and drug paraphernalia. Vian told Stelter that she believed Campbell had been using methamphetamine for the past year and had been faking his drug tests.

The ISRB issued a warrant for Campbell's arrest, and Campbell was arrested and placed into custody on the warrant. The State charged Campbell with violation of a no-contact order, but that charge was dismissed the next day.

Stelter spoke to Campbell at the jail, and Campbell admitted to using methamphetamine daily for several months. Campbell also signed a drug use admission form. Stelter served

---

[1] The ISRB previously released Campbell in 2012 and revoked Campbell's release in 2015 with a new minimum term of 18 months.

2

No. 57303-2-II

Campbell with several forms including an order for arrest and detention, a specified list of alleged violations, a list of rights and privileges relating to parole revocation procedures, and a request for appointment of counsel.

Stelter submitted a notice of violation to the ISRB, alleging the following community custody violations:

Violation 1:
Consuming Methamphetamine daily between 12/01/2020 and 01/29/2021.

Violation 2:
Failure to notify a Community Corrections Officer within 48 hours of arrest or citation as directed on or before 01/21/2021.

Violation 3:
Failing to be available for contact with a Community Corrections Officer on or before 01/25/2021.

Violation 4:
Failure to obey all laws by committing Possession of a Stolen Motor Vehicle (x2) In violation of RCW 9A.56.068 on/about 01/18/2021.

Violation 5:
Failure to obey all laws by committing Malicious Mischief 3rd DV in violation of RCW 9A.48.090 on/about 01/18/2021.

Violation 6:
Failure to obey all laws by committing Interfering with Reporting Domestic Violence in violation of RCW 9A.36.150 on/about 01/18/2021.

Violation 7:
Failure to obey all laws by committing Violation of a No Contact Order in violation of RCW 36.50.110 on/about 01/27/2021.

No. 57303-2-II

Pet. Appx. B at 1-2.[2,3]

The ISRB found probable cause for the alleged violations and held a violation hearing. At the time of the hearing, the criminal charges forming the bases for violations 4 through 6 were still pending and unadjudicated.

Campbell pleaded guilty to violations 1 through 3.[4] Campbell asserted the Fifth Amendment to violations 4 through 7. Because the criminal charge (violation of a no-contact order) that formed the basis for violation 7 had been dismissed, the ISRB dismissed violation 7 without prejudice.

Vian testified at the violation hearing that she called 911 when Campbell screamed in her face and may have tripped her. As she was calling 911, Campbell took the phone and threw it across the room. Vian also testified that, on another occasion, Campbell grabbed a knife and gestured that he was going to jab the knife into her ribs. Following this testimony, the ISRB presiding board member stated, "I think that's all I need." Pet. Appx. C at 30.

Stelter attempted to ask Campbell questions regarding the second arrest pursuant to the warrant. When Campbell was instructed to not answer on Fifth Amendment grounds, Stelter began reading from a police report regarding Campbell's behavior during the second arrest and at the jail following this arrest.

---

[2] For clarity, the court notes that page 3 of the notice of violation was inserted between pages 1 and 2.

[3] Campbell underwent four violation processes after his 2017 release but prior to this violation process. All violation processes involved consumption of methamphetamines.

[4] On violation 3, Campbell pleaded guilty "with explanation" and stated that he had no way of contacting Stelter. Pet. Appx. C at 12.

4

No. 57303-2-II

Campbell's attorney later questioned Stelter as to whether Stelter saw any of the behavior he was describing or whether Stelter was just reading from the police report. Stelter responded that he was reading from the police report, and Campbell's attorney asked if the officer was available to testify. Campbell then asked if he had a right to go through the evidence or if it was "just being presented as we go," explaining that he did not receive the police report. Pet. Appx. C at 36. Stelter stated that Campbell's attorney received all the discovery material, and Campbell's attorney responded that Stelter was supposed to serve Campbell with the discovery material.

The ISRB presiding board member then stated:

> [S]ince there is a question of whether you received this additional information . . .
> from a police report about your behavior while being transported, I don't know that
> we need to have a witness because I'm not going to consider it. I think I have more
> than enough to make my ruling.

Pet. Appx. C at 37.

The ISRB found Campbell guilty of violations 1, 2, 3, 5, and 6. The ISRB found Campbell did not commit violation 4.

The ISRB presiding board member asked Stelter for his recommendation as to disposition. Stelter stated that he was initially going to recommend treatment, but he "could lean towards revocation with the new evidence that [he] read in the reports." Pet. Appx. C at 39.

The ISRB revoked Campbell's release and set a new minimum term of 36 months based on the following:

- [Campbell] has admitted to continuous use of methamphetamines
- [Campbell has] had 5 violation processes since his latest release, all involving methamphetamine consumption which shows he's engaging in high risk behaviors despite being given many opportunities for treatment
- [Campbell] has been charged with Malicious Mischief 3rd DV and other crimes

5

No. 57303-2-II

- • [Campbell is] currently unemployed
- • [Campbell] cannot be adequately supervised in the community.

Pet. Appx. D at 4. The ISRB made written findings and conclusions, which stated that the presiding member considered testimony at the hearing, various documents, "and all other material provided in Discovery." Pet. Appx. D at 3. The written findings and conclusions also stated that Stelter's original recommendation was treatment, 90 days of monitoring, and obtaining work and stable housing. The written findings and conclusions noted that, given the police report, Stelter changed his recommendation to either revocation or reinstatement of community custody with additional conditions.

Following the revocation and return to prison, Campbell sought to receive, but was denied, visits from Vian. Campbell then filed internal complaints and resolution requests with the Department of Corrections (DOC), alleging that he was never convicted of a crime against Vian. The DOC denied Campbell's requests because of Campbell's offenses against Vian.

Campbell timely filed this PRP.[5]

ANALYSIS

A. STANDARD OF REVIEW

A petitioner may request relief if they are under unlawful restraint. RAP 16.4(a). Restraint is unlawful if "[t]he conviction was obtained or the sentence or other order . . . was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2). The usual threshold requirement for petitioners to show "actual

---

[5] Collateral attacks of ISRB decisions are subject to a two-year statute of limitations. *See In re Pers. Restraint of Betts*, 21 Wn. App. 2d 173, 178, 505 P.3d 148 (2022). Campbell brought this petition on September 2, 2022, within two years of the ISRB's March 25, 2021 decision.

6

No. 57303-2-II

and substantial prejudice" does not apply to PRPs challenging ISRB decisions. *In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 836 n.2, 502 P.3d 349 (2022).

We review ISRB parole decisions for an abuse of discretion. *In re Pers. Restraint of Dyer*, 175 Wn.2d 186, 196, 283 P.3d 1103 (2012). An offender has no right to parole, and the ISRB's decisions regarding an offender's parole are entirely within its discretion. *Id*. at 196-97. ISRB decisions are entitled to substantial deference and "'the courts will not substitute their discretion for that of the [ISRB].'" *Id*. at 196 (alteration in original) (quoting *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988)).

The ISRB abuses its discretion if it fails to follow its own procedural rules or if it bases its decision solely on speculation and conjecture. *Id.* The petitioner bears the burden of proving that the ISRB abused its discretion. *Id.*

B.    PROCEDURAL RULES REGARDING ADMINISTRATIVE DISMISSALS WITHOUT PREJUDICE

Campbell argues that the ISRB erred by failing to follow its own procedural rules. Specifically, Campbell contends that the procedural rules required the ISRB to dismiss violations 5 and 6 without prejudice because the violations were based on criminal charges that were still pending. We disagree.

DOC Policy 460.130 (Policy 460.130) is a DOC policy regarding responses to violations and new criminal activity. DOC Policy 460.130 (rev. May 5, 2022) (Policy 460.130).[6] Policy

---

[6]  [https://perma.cc/N94V-3VP2].

Policy 460.130 was revised in 2021 and 2022. However, no substantive changes were made affecting this opinion. Therefore, we cite to the current policy.

No. 57303-2-II

460.130 provides different procedures for individuals under ISRB jurisdiction and individuals under DOC jurisdiction. Policy 460.130(II), (V), at 8, 12.

If an individual under ISRB jurisdiction is arrested for new criminal behavior, the CCO must notify the ISRB. Policy 460.130(II)(A) at 8. If the violation is serious or if the CCO believes the individual is a threat to community safety, the CCO will arrest the individual, serve the individual with certain documents, and submit a notice of violation to the ISRB. Policy 460.130(II)(A)(3), at 9. The ISRB will then review the violations, "including any Failure to Obey All Laws," and recommendations to determine probable cause and whether a hearing should be held and if sanctions are appropriate. Policy 460.130(II)(B) at 9. "In the case of pending criminal allegations, the board *may* defer any board hearing pending the outcome or *may* dismiss without prejudice one or more allegations." WAC 381-100-100(6) (emphasis added).

On the other hand, if an individual under DOC jurisdiction engages in new criminal behavior, the CCO will request an administrative dismissal without prejudice for the failure to obey all laws violation. Policy 460.130(V)(A)(1), at 12. An administrative dismissal without prejudice means the alleged violation is pending and may be addressed in a future violation process. Policy 460.130(V)(B)(1), at 12. The CCO will then monitor the case every 30 days until the court makes a final decision or until the DOC no longer has jurisdiction. Policy 460.130(V)(B)(4), at 13.

Here, Campbell is serving an indeterminate sentence of 125 months to life. The ISRB released Campbell from total confinement, and Campbell began serving community custody under the jurisdiction of the ISRB. RCW 9.94A.507(5); *see In re Pers. Restraint of Winton*, 196 Wn.2d 270, 275, 474 P.3d 532 (2020) (an individual transferred from total confinement to community

8

No. 57303-2-II

custody by the ISRB "remains under the continuing jurisdiction of the ISRB"). Campbell bases his argument on Policy 460.130(V), which pertains to individuals under DOC jurisdiction. Campbell fails to make any argument under the relevant DOC policy, Policy 460.130(II), applicable to an individual under IRSB jurisdiction.

Campbell was under ISRB jurisdiction, and the ISRB followed the relevant procedures for individuals under ISRB jurisdiction outlined in Policy 460.130(II). The ISRB had the discretion to dismiss violations 5 and 6 without prejudice, but Campbell has provided no authority showing that ISRB was *required* to dismiss violations 5 and 6 without prejudice. WAC 381-100-100(6). Therefore, Campbell has failed to show that the ISRB abused its discretion by not dismissing violations 5 and 6 without prejudice, and Campbell's claim fails.

C.   PROCEDURAL DUE PROCESS NOT VIOLATED

1.   Violations 5 and 6

Campbell argues that the ISRB violated his procedural due process rights by failing to follow its own procedural rules regarding violations 5 and 6. In support of this claim, Campbell makes the same argument that the ISRB was required to dismiss violations 5 and 6 without prejudice under Policy 460.130.

As discussed above, the ISRB was not required by its policies to dismiss violations 5 and 6 without prejudice. Therefore, a procedural due process claim cannot be based on the ISRB's decision not to dismiss violations 5 and 6 without prejudice. Campbell's claim fails.

No. 57303-2-II

2. Police Report

Campbell argues that the ISRB violated his procedural due process rights by allowing Stelter to introduce an undisclosed police report at the hearing in violation of state laws and regulations regarding discovery. We disagree.

RCW 9.94A.737(6)(a) provides that, when an offender is accused of violating community custody, "[t]he department shall provide the offender with written notice of the alleged violation and the evidence supporting it." Although this statute requires the DOC to provide the offender with the evidence supporting the violation, the statute does not specify that the DOC must send the evidence directly to the offender instead of the offender's counsel. Nor does the statute require the DOC to provide evidence of the reasons for a CCO's dispositional recommendation.

The Washington Administrative Code (WAC) provides specific discovery rules for ISRB parole revocation and community custody violations hearings. For parole revocation hearings, "[t]he community corrections officer shall provide, within ten days of suspension of parole, *the parolee's defense attorney* with a copy of the violations specified, the violation report, and all evidence relating to the violations charged intended for introduction at the hearing, either as factual evidence or in support of a dispositional recommendation." WAC 381-70-160(3) (emphasis added). For community custody violation hearings, "[t]he community corrections officer shall provide the department's AAG, *the offender and/or the offender's defense attorney* with a copy of the factual allegations, the violation report, and all evidence relating to the violations charged intended for introduction at the hearing, either as factual evidence or in support of a dispositional recommendation." WAC 381-100-170(1) (emphasis added).

10

No. 57303-2-II

Here, the hearing in question addressed community custody violations and revocation of parole, so both WACs above apply. Because Stelter relied on the police report in support of his dispositional recommendation, both WAC 381-70-160(3) and WAC 381-100-170(1) required Stelter to disclose the police report in discovery. However, both WACs allowed Stelter to serve the defense attorney, rather than the offender, with the evidence.

The record shows that Stelter stated at the hearing that all discovery materials had been provided to Campbell's attorney. Campbell's attorney did not dispute this statement and instead simply argued that Stelter should have served the materials on Campbell directly.[7] Campbell has failed to show that Stelter violated either of the relevant WACs with improper service, or that the ISRB violated Campbell's procedural due process rights by allowing Stelter to rely on the police report in forming his dispositional recommendation. Accordingly, Campbell's claim fails.

3.      Ineffective Assistance of Counsel

Campbell claims that he received ineffective assistance of counsel in violation of his procedural due process rights when his attorney failed to object to the admission of the undisclosed police report. We disagree.

The right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution does not attach to parole revocation hearings. *In re Pers. Restraint of McMurtry*, 20 Wn. App. 2d 811, 816, 502 P.3d 906 (2022). However, parolees may have a procedural due process right to counsel at such

---

[7] We note that, under the rules of professional conduct, "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." RPC 4.2.

11

No. 57303-2-II

hearings. *See id.* at 817-18 (holding that ineffective assistance of counsel claim failed where petitioner asserted no due process claim).

Regardless of whether the right to effective assistance of counsel attached to Campbell's parole revocation hearing, Campbell cannot show that he received ineffective assistance of counsel based on his attorney not objecting to the admission of an undisclosed police report. As discussed above, the record shows that Stelter properly disclosed the police report to Campbell's attorney. Further, the ISRB presiding board member made clear that the police report was not relied on in reaching a decision.[8] Therefore, Campbell's ineffective assistance of counsel claim fails.

4.        Internal Complaints and Resolution Requests

Under a procedural due process heading, Campbell claims that "[t]he DOC/ISRB did not meet Mr. Campbell's evidence with their own competent evidence and *quasi*-admits that the ISRB violated its discretion by acting as an adjudicator of crimes." Pet. at 19. In this section of his petition, Campbell references the internal complaint and resolution requests that he submitted to the DOC when Campbell was seeking visits with Vian. Campbell contends that the DOC or ISRB

---

[8] Campbell contends that the ISRB presiding board member relied on the police report because the police report was partially read into the record and because the written findings and conclusions stated that the presiding board member relied on all materials provided in discovery, referenced a police report related to violations 4 through 7, and referenced what Vian told law enforcement about alleged criminal conduct. The record shows that the police report that related to violations 4 through 7 and Vian's statements was a different police report (from the first arrest) that is not at issue in this PRP. And although the police report from the second arrest was partially read into the record, and the written findings and conclusions state that the ISRB presiding board member considered all material provided in discovery, the presiding board member expressly stated that the police report at issue was not considered in determining the matter, and there is no indication that the ISRB presiding board member ultimately relied on the police report at issue.

12

No. 57303-2-II

"chose a path of silent acquiescence" in response to his complaints and resolution requests. Pet. at 19.

To the extent Campbell is challenging the DOC's internal response to Campbell's complaints and resolution requests, Campbell does not assign error to the DOC's internal response. Therefore, we do not address any challenge to the DOC's internal response. *See* RAP 10.3(g) ("The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.").

Campbell appears to argue that the DOC or ISRB was required to present evidence in response to Campbell's internal complaints and resolution requests. The case that Campbell cites, *In re Personal Restraint of Rice*, provides that the State must meet a petitioner's evidence with its own competent evidence when responding to a PRP. 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). Campbell cites no authority in support of his contention that the DOC or ISRB was required to present evidence in response to Campbell's internal complaints and resolution requests. Nor does Campbell cite any authority stating that the DOC's or ISRB's response to Campbell's internal complaints and resolution requests precludes or limits its ability to respond to his PRP before this court. If a party provides no citation in support of a proposition, we may assume that counsel, after diligently searching, has found none. *State v. Arredondo*, 188 Wn.2d 244, 262, 394 P.3d 348 (2017); *see also* RAP 10.3(a)(6) (argument in brief must include "citations to legal authority"). Therefore, Campbell's claim fails.

13

No. 57303-2-II

CONCLUSION

The ISRB followed its own procedural rules and did not abuse its discretion, and Campbell's procedural due process rights were not violated. Accordingly, we deny Campbell's PRP.

_J., J._
Lee, J.

We concur:

_Glasgow, C.J._
Glasgow, C.J.

_Che, J._
Che, J.