# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  59688-1-II |
| DONALD HOWARD McELFISH, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, J. — In this personal restraint petition (PRP), Donald H. McElfish seeks relief from personal restraint imposed following the Indeterminate Sentencing Review Board's (ISRB) decision finding him not releasable and setting a new minimum term.  McElfish primarily argues that the ISRB improperly relied on speculation and conjecture to find him not releasable.  Because the ISRB appears to have failed to consider the significant period of time McElfish was released in the community, we grant McElfish's PRP and remand for a new ISRB releasability hearing.[1]

## FACTS

In 2014, McElfish was convicted of attempted second degree rape, first degree kidnapping, and second degree assault based on intent to commit a felony with sexual motivation.  The trial court imposed an indeterminate sentence of 100 months to life.

In 2015, McElfish filed a motion for a new trial based on an affidavit filed by the victim of the attempted second degree rape.  *State v. McElfish*, No. 52115-6-II, slip op. at 2 (Wash. Ct. App. Mar. 17, 2020) (unpublished), *review denied*, 197 Wn.2d 1016 (2021).[2]  The trial court determined

---

[1]  Because we grant McElfish's request for relief, his motion to appoint counsel is denied.

[2]  https://www.courts.wa.gov/opinions/pdf/D2%2052115-6-II%20Unpublished%20Opinion.pdf

that the victim had recanted her testimony, granted McElfish's motion for a new trial, and vacated McElfish's judgment and sentence. *Id*. at 3. McElfish was released on bail and conditions of release, which required McElfish to report to offender services regularly, not consume drugs or alcohol, submit to urinalysis and breathalyzer tests as requested, have no contact with the victim, not possess firearms or dangerous weapons, not travel outside of Cowlitz County without permission, and report any change of address or phone number.

In 2017, Division One of this court reversed the order granting McElfish's motion for a new trial. *Id*. at 3-4. On remand, the trial court determined that the victim did not recant her testimony and denied the motion for a new trial. *Id*. at 4. This court affirmed the order denying McElfish's motion for a new trial. *Id*. at 6.

McElfish returned to custody in April 2018. There is no evidence that McElfish violated his conditions of release or committed any new crimes while he was released in the community.

On January 18, 2023, the ISRB held a hearing pursuant to RCW 9.95.420 to determine whether McElfish was releasable. The ISRB heard testimony from Classification Counselor Micah Turner and McElfish. The ISRB also considered a report from the End of Sentence Review Committee (ESRC), a presentence investigation report from 2014, a Static-99R risk assessment, and Department of Corrections (DOC) records. And the ISRB identified other risk-related behaviors, including a 1973 conviction for sodomy, a 1999 conviction for drive-by shooting, a 2004 conviction for fourth degree assault—domestic violence, and a 2009 conviction for possession of drug paraphernalia.

The ESRC report noted that McElfish scored a 3 on the Static 99-R, putting him at low to moderate risk of sexual recidivism. The ESRC recommended that McElfish be aggravated to a

2

Level II risk classification[3] for community notification purposes because of the failure of past interventions to deter behavior. The ESRC report also noted that McElfish had been screened for sex offender treatment and found amendable to treatment, but he had not yet begun the program.

At the releasability hearing, Turner explained that McElfish had not done any significant work or programming because of numerous medical issues. McElfish was also screened and found not amenable to treatment. McElfish had no serious infractions and two minor infractions. Turner also noted McElfish had no visitors or community support and planned to use his own money and social security benefits to support himself in the community when released.

McElfish told the ISRB that he had nothing to add to what Turner had explained. The ISRB asked McElfish about the offense behavior that he was incarcerated for. McElfish denied responsibility for the offense and claimed that he was convicted for what his co-defendant in the

---

[3] The ESRC explains risk classification as follows:

Sex offenders required to register will be placed in one of three classifications. The goal of classification and the notification statute is to provide the proper amount of information about a releasing sex offender to individuals within the community. The risk level and resulting notification should be rationally related to the risk s/he poses to the community at large:

- Level 1 - Low risk of sexual re-offense (i.e., arrest/conviction for new sexual crime) within the community at large. Law enforcement officials share information with other law enforcement agencies and may disclose information to the public upon request.
- Level 2 - Moderate risk of sexual re-offense within the community at large. Law enforcement officials may share information with schools, child care centers, family day care providers, public libraries, businesses, neighbors, and community groups near the offender's expected residence or places where they are regularly found.
- Level 3 - High risk of sexual re-offense within the community at large. In addition to the type of disclosures made for Level 2 sex offenders, law enforcement can provide information to the public at large.

PRP, App. A, End of Sent'g Comm. Decision at 24 (boldface omitted).

case had done. McElfish also noted that the victim had recanted her testimony in his motion for a new trial. The ISRB also asked McElfish about his prior 1973 conviction for sodomy, and McElfish claimed that he had consensual sex with the victim. McElfish also claimed his 1999 conviction for drive-by shooting was actually in self-defense.

McElfish asked if the ISRB would be considering letters that had been sent to the ISRB accusing him of other criminal activity, including a letter from a woman who claimed that McElfish raped her 29 years ago. The ISRB said it was not considering crimes McElfish had not been convicted of committing.

The ISRB expressed concern that McElfish's criminal activity was related to his association with criminal type people. McElfish agreed that he had been associating with "[h]ooligans" and his plan was to rent a property where he could live alone. ISRB Response, Ex. 3, at 9.

The ISRB also noted that McElfish had not done any sex offender treatment in prison because he denied his sex offenses and, therefore, did not qualify for treatment. The ISRB further noted that McElfish would still have to pay for evaluation and treatment in the community. Also, there would be many other conditions McElfish would have to comply with such as not associating with felons, not allowing women to live in his house, and not being allowed to live in places where drugs or criminal activity is taking place.

Following the hearing, the ISRB issued its decision. The ISRB found that McElfish's poor health and low score on the risk assessment were factors in favor of his release. However, McElfish's failure to engage in sex offender or substance abuse treatment, prior sex offense, and history of anti-social behavior was evidence against his release. Specifically, the ISRB found:

4

The community custody conditions, and any favorable evidence noted above considered by the Board would not sufficiently reduce the likelihood of Donald McElfish committing new sex offenses because:

Donald McElfish denies any sexual elements to the crime and accepts little personal responsibility for his actions during the offense. He has not taken offender change programming that would address his highest risks for sexual re-offense.

He appears to have led a very chaotic life filled with association with anti-social peers to include possible affiliation with the Gypsy Joker Motorcycle gang. This does not bode well for compliance with conditions of supervision. He has a history of being transient/homeless though he reports receiving [Veteran's Affairs] benefits much of his adult life. This is somewhat common among offenders who do not want the Department of Corrections to be able to keep an eye on them and know what they are up to.

ISRB Response, Ex. 1, Attach. B at 5-6. The ISRB found by a preponderance of the evidence that McElfish is more likely than not to commit new sex offenses if released, despite any conditions. Accordingly, the ISRB found McElfish not releasable and added 18 months to McElfish's minimum term.

McElfish filed this PRP challenging the ISRB's decision.

ANALYSIS

McElfish's primary contention is that the ISRB abused its discretion by relying on speculation and conjecture when finding that he was not releasable. In an affidavit supporting his PRP, McElfish identifies multiple reasons he believes the ISRB's decision improperly relies on speculation and conjecture, including the ISRB's failure to meaningfully consider the time he spent in the community after his motion for a new trial was granted. We agree that the ISRB abused its discretion by failing to meaningfully consider the time McElfish spent in the community while awaiting the outcome of the appeal of the order granting him a new trial.

5

McElfish bears the burden of showing that he is under unlawful restraint. *In re Pers. Restraint of Dyer*, 175 Wn.2d 186, 195-96, 283 P.3d 1103 (2012); RAP 16.4(c). To meet their burden in a PRP, the petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992).

An ISRB decision is reviewed for an abuse of discretion. *Dyer*, 175 Wn.2d at 196; *In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 836-37, 502 P.3d 349 (2022). ISRB decisions are entitled to substantial deference and "'the courts will not substitute their discretion for that of the [ISRB].'" *Dyer*, 175 Wn.2d at 196 (alteration in original) (quoting *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 628, 763 P.2d 199 (1988)). "An abuse of discretion may be found where the ISRB fails to follow its own procedural rules for parolability hearings or where the ISRB bases its decision on speculation and conjecture only." *Dyer*, 175 Wn.2d at 196; *see also Dodge*, 198 Wn.2d at 837. The petitioner bears the burden of demonstrating the ISRB abused its discretion. *Dogde*, 198 Wn.2d at 837.

RCW 9.95.420(3)(a) provides, in relevant part,

> The board shall order the offender released, under such affirmative and other conditions as the board determines appropriate, unless the board determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released.

The statute creates a presumption of release. *See Dodge*, 198 Wn.2d at 839 (interpreting the same language in RCW 9.94A.730). To overcome the presumption and deny release, the ISRB must find, by a preponderance of the evidence, no conditions of release can sufficiently mitigate the risk to public safety. *Id.* at 841.

To give effect to the presumption of release, the ISRB must give meaningful weight to evidence of the petitioner's rehabilitation, including the petitioner's awareness of their crimes, petitioner's changed behavior, and the petitioner's assessed risk to reoffend. *Id.* at 840. However, "'[t]here is no mathematical formula to make [a release] decision, and there is no set of facts, which, if shown, mandate a decision favorable to the individual.'" *Id.* at 844 (internal quotation marks omitted) (quoting Record).

Here, McElfish was released into the community for approximately two years under conditions of release. During this period there is no evidence that McElfish violated any condition of his release or committed a new crime. Despite this circumstance, the ISRB did not address how it found, by a preponderance of the evidence, that no conditions of release would be sufficient to protect public safety. Thus, the ISRB could not have meaningfully considered the evidence that McElfish is releasable when McElfish had already been released in the community for approximately two years with minimal conditions and there is no evidence that he had violated any conditions of release or had reoffended.

The ISRB contends that the ISRB had no obligation to consider McElfish's performance in the community because McElfish did not bring it to the attention of the ISRB during the hearing. However, reference to the order vacating his conviction and notification to the ISRB that McElfish had been released are documented in the DOC OMNI records that appear to have been reviewed by the ISRB in reaching its decision. Given the presumption of release and the requirement that the ISRB overcome that presumption by finding, by a preponderance of the evidence, that no conditions of release could protect public safety, the ISRB cannot simply ignore evidence that McElfish had previously been released in the community without violating any conditions of

release or reoffending during that time. The ISRB had an obligation to meaningfully consider McElfish's prior release in the community.

The ISRB also contends that McElfish's compliance with the minimal conditions imposed by the superior court "does not appear to be a major achievement." ISRB Response at 16. Regardless of whether McElfish's compliance with the minimal conditions of release imposed by the superior court was a "major achievement," the ISRB was required to meaningfully consider McElfish's prior release. In order to determine whether the preponderance of the evidence shows no conditions could protect public safety, evidence that McElfish was able to be released to the community on minimal conditions and not commit a new sex offense should have been considered.

Finally, the ISRB claims that "despite McElfish's claimed compliance, he provides no evidence showing that he actually complied with the conditions." ISRB Response at 16. But McElfish is only required to state with particularity facts which if proven would entitle him to relief. *Rice*, 118 Wn.2d at 886. Further, to be entitled to relief, McElfish needs to show that the ISRB failed to meaningfully consider evidence that would support his release, not that he proved he complied with all the conditions of his release. Regardless, there is no evidence that McElfish violated any conditions of release or committed any sex crimes, or any other crime for that matter, while he was released.[4]

We cannot substitute our judgment for that of the ISRB, and there are no specific set of facts in our record that entitle McElfish to be released. However, the ISRB needs to meaningfully consider McElfish's prior release into the community to overcome the presumption of release and

---

[4] We note that it strains reason to believe that the ISRB would not have identified evidence that McElfish violated the conditions of his release or committed new sex crimes, or any other crime, while released in the community if such evidence existed.

find that there are no release conditions that could protect public safety. The record shows the ISRB did not do that. Accordingly, we grant McElfish's PRP and remand to the ISRB for a new hearing on releasability.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Veljacic, A.C.J.

Che, J.