[No. 54578–2.  En Banc.  October 27, 1988.]

*In the Matter of the Personal Restraint of*
BRIDGET M. WHITESEL, ET AL, *Petitioners.*

622

*Patricia J. Arthur* and *Terri Nettke* of *Institutional Legal Services* and *Evergreen Legal Services; Nancy Horgan; John Midgley* and *Smith, Midgley & Pumplin, P.S.*, for petitioners.

*Kenneth O. Eikenberry, Attorney General*, and *William L. Williams, Mickey Brock, William R. Walton*, and *Aaron K. Owada, Assistants*, for respondent.

ANDERSEN, J.—

FACTS OF CASE

At issue here is the adequacy of the Indeterminate Sentencing Review Board's "1400 Review" procedures and the validity of the "exceptional" minimum terms imposed pursuant to those procedures.

On November 19, 1987, Bridget M. Whitesel, Tammy J. Thomas, Patricia A. Sanchez, Dennis L. Harrison, Donald G. Booth, Vincent T. Jannis and William W. Ross filed

personal restraint petitions challenging the procedures followed by the Indeterminate Sentencing Review Board (Board) in redetermining their minimum terms of confinement. They alleged that the Board erroneously exceeded sentencing guidelines of the Sentencing Reform Act of 1981 (SRA) in resetting their minimum terms during the 1400 Review Project. This review project required the Board to reconsider the minimum terms of offenders convicted and sentenced before the effective date of the SRA according to criteria set forth in Substitute House Bill 1400 passed by the 49th Legislature at its 1986 Regular Session.[1] This legislation and the resulting review project will be discussed more fully following this factual summary.

Except for Patricia Sanchez' personal restraint petition, however, all of the other individual petitions are now moot. Petitioners Whitesel, Harrison, Booth and Jannis received standard range terms subsequent to the filing of their petitions, and petitioners Ross and Thomas are no longer under the restraint of a Board minimum term decision. We therefore detail only the facts pertaining to petitioner Sanchez' case herein.

Petitioner Sanchez was tried, convicted and incarcerated for first degree robbery in 1982. Following an admissions meeting or hearing which petitioner attended, the Board set her minimum term at 90 months. Petitioner was not provided with all of the precise facts and documentary evidence used to set her minimum term prior to the admissions meeting. She was, however, provided with a copy of the prosecuting attorney's detailed statement[2] regarding her robbery conviction at the admissions meeting, and was given the opportunity to refute allegations in the statement at that time.

On June 15, 1987, the Board reviewed her minimum term pursuant to the 1400 Review Project and reduced her term

[1]Laws of 1986, ch. 224, § 6, p. 728.

[2]See RCW 9.95.031.

to 84 months. The comparable SRA standard range for petitioner's crime, adjusted to give credit for jail time she had served, is 40 to 55 months. To support this departure from SRA guidelines, the Board found that petitioner and two others "attacked a man and beat him to unconsciousness and took his money and wallet demonstrating that she used force in excess of what was necessary for the crime committed". The Board set out these findings in its Statement of Decisions and Reasons for the exceptional sentence. Petitioner was not given an in–person hearing to refute the facts relied upon by the Board in redetermining her minimum sentence.

After petitioner filed her personal restraint petition with this court, the Board again reviewed her minimum term. It upheld the 84–month minimum term, noting that the judge and prosecuting attorney had recommended 10 and 16 years, respectively. The Board further observed that the robbery she committed had involved deliberate cruelty, humiliation and force beyond that necessary to commit the crime: "[The victim] was beaten severely with chains and stabbed in the left hand, the left leg, and his head area with a knife. His clothes were cut off of him. His wallet and credit cards were taken, and he was left beside the road."[3]

Following the Board's redetermination procedure, it gave petitioner the opportunity to submit written comments regarding the information relied upon to justify her exceptional sentence. Petitioner submitted three letters and requested an in–person hearing. The Board denied her request for a hearing on the grounds that the information she submitted was general in nature and did not claim or address any specific factual errors in the information that was used to set her minimum term. The Board made clear that it would consider a review of the minimum term if the trial judge or prosecuting attorney submitted new or amended information or if petitioner presented the Board

---

[3]Exhibit 11.

with specifics of claimed factual errors in the information used to set her minimum term.

Since petitioner Sanchez' case remains ripe for review, we will consider the issues that she raises. These issues were raised by the other petitioners as well, so they are referred to herein as the petitioners' issues.[4] Three such issues are presented.

## ISSUES

ISSUE ONE. Were the Board's 1400 Review minimum term decisions in this case reasonably consistent with the purposes and standards of the Sentencing Reform Act of 1981?

ISSUE TWO. Did petitioners receive requisite due process protections when their minimum terms were redetermined during the 1400 Review Project?

ISSUE THREE. Did the 1986 amendment of the transition statute (RCW 9.95.009(2)) and the 1400 Review procedures implemented thereunder violate equal protection guaranties?

## DECISION

ISSUE ONE.

CONCLUSION. In adapting minimum terms of pre–SRA offenders (such as the petitioners herein) to SRA sentencing ranges, the Board in its 1400 Review Project followed the guidelines provided by this court and the Legislature. Though some errors were made in the course of the redetermination process, the Board proved willing to reset minimum terms when mistakes were directed to its attention. No such mistakes were made, however, in petitioner Sanchez' case.

An understanding of the history of the SRA and of the 1400 Review Project is helpful in considering the issues presented in this case.

---

[4]Even if the Sanchez case were moot, this court could review the issues raised because of their continuing and substantial public interest. *See In re Myers*, 105 Wn.2d 257, 261, 714 P.2d 303 (1986).

The SRA changed the criminal sentencing system in Washington from an indeterminate system to a determinate system effective July 1, 1984.[5] The previous indeterminate sentencing system was rehabilitation oriented, with broad discretion given to the Board of Prison Terms and Paroles to fix minimum terms according to a wide-ranging set of factors.[6] The SRA which succeeded that previous system introduced the concept of accountability into sentencing and reduced the effect of discretionary factors.[7] The SRA further provided that as of July 1, 1986, the Board of Prison Terms and Paroles would be redesignated the Indeterminate Sentencing Review Board.[8] This latter agency, herein referred to as the Board, continued making minimum term and parole release decisions for pre–SRA offenders.[9] While the SRA did not apply its new sentencing ranges to pre–act offenses, the transition statute of the SRA (RCW 9.95.009(2)) did instruct the Board to consider the purposes, standards and sentencing ranges set forth in the SRA and to attempt to make its decisions regarding pre–SRA offenders *reasonably consistent* with SRA ranges and standards.[10]

In *In re Myers,* 105 Wn.2d 257, 268, 714 P.2d 303 (1986), a case which involved a prisoner by the name of Obert Myers, we held that the requirements of the transition statute applied to pre–SRA offenders convicted and sentenced *after the SRA became effective.* We said there that in reviewing minimum terms of such offenders, the Board must impose sentences reasonably consistent with the

---

[5]*In re Irwin,* 110 Wn.2d 175, 178–79, 751 P.2d 289 (1988).

[6]D. Boerner, *Sentencing in Washington* § 2.2(d) (1985).

[7]RCW 9.94A.010.

[8]*Irwin,* at 179.

[9]RCW 9.95.009(2).

[10]*Irwin,* at 179.

SRA,[11] and that when the Board departs from SRA ranges, it should provide adequate written reasons for doing so.[12] In the resulting "Obert Myers" reviews, the Board reviewed the minimum terms of pre–SRA offenders convicted and sentenced after July 1, 1984.

Following our decision in *Myers,* the Legislature passed Substitute House Bill 1400,[13] which amended the transition statute to further charge the Board to consider the minimum term recommendations of the sentencing judge and prosecuting attorney in pre–SRA cases and the different charging and disposition practices under the former indeterminate system, as well as the ranges and standards of the SRA.[14] Pursuant to that amendment of the transition statute (RCW 9.95.009(2)), we held in *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 511, 730 P.2d 1327 (1986) that *all* pre–SRA offenders, including those convicted and sentenced *before the SRA became effective,* are entitled to have their terms reviewed and redetermined pursuant to SRA purposes, standards and ranges. Thus commenced the Board's 1400 Review Project, whereby using the Substitute House Bill 1400 criteria it reviewed the minimum terms of offenders committed to prison and given a minimum term *prior* to July 1, 1984. All of the petitioners herein had their minimum terms reviewed pursuant to this 1400 Review Project.

It is the petitioners' claim that the Board made numerous errors during this project in reviewing their terms and the terms of several other inmates and that it erroneously set exceptional minimum terms in violation of the transition statute (RCW 9.95.009(2)), *Myers* and *Addleman.* Though not applicable to petitioner Sanchez' case, some of

---

[11]*Myers,* at 263.

[12]*Myers,* at 266.

[13]See footnote 1.

[14]*Irwin,* at 179.

the alleged mistakes included using factors taken into account in determining the standard sentencing range as justification for going outside the standard range in violation of this court's holding in *Myers* (at 266); improperly imposing exceptional minimum terms on the ground that the petitioner was armed with a deadly weapon during the commission of the offense in violation of RCW 9.95.015, 9.94A.125 and 9.94A.370; using uncharged crimes to justify an aggravated sentence in violation of RCW 9.94A.370(2); and using insufficient rehabilitation to justify exceptional sentences in violation of *Addleman* (at 511).

■ As an affidavit in the record of this proceeding makes clear, the Board reviewed a great many criminal convictions, in fact some 4,580 of them, in its 1400 Review Project. In the cases involving the seven named petitioners, the Board candidly acknowledged making certain errors but then corrected these and redetermined the affected minimum terms accordingly. We do not herein purport to review cases of those sentenced pursuant to the 1400 Review Project which are not before us to see if further errors might also have been made. We do, however, underscore our previous holding that the Board is required to give adequate written reasons for imposing exceptional sentences and should at least attempt to make such sentences the exception rather than the rule.[15]

We also reiterate, as we clearly held in *Myers,* that the courts are *not* a super Indeterminate Sentencing Review Board and will not interfere with a Board determination in this area unless the Board is first shown to have *abused its discretion* in setting a prisoner's discretionary minimum term.[16] In short, the courts will not substitute their discretion for that of the Board. In the case of petitioner Sanchez (the only petitioner herein whose case is still ripe for

---

[15]*See Myers,* at 266; *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 511, 730 P.2d 1327 (1986).

[16]*Myers,* at 264.

review), we perceive no abuse of discretion in the 84–month exceptional minimum term imposed. The criteria used by the Board to set her exceptional sentence, the recommendations of the sentencing judge and prosecuting attorney and the brutality the petitioner employed in committing the crime of which she was convicted, were appropriate considerations.[17] The trial judge recommended a 10–year minimum, which was substantially longer than the guideline term, and the brutality employed by petitioner far exceeded that necessary to commit the crime of first degree robbery of which she was convicted.[18] The Board provided adequate written reasons justifying the 84–month minimum term it set. There was neither error nor a refutation of the SRA in the exceptional minimum sentence imposed in petitioner Sanchez' case during the 1400 Review.

Issue Two.

Conclusion. Petitioners received appropriate due process protections during the 1400 Review of their minimum terms. Such review did not entitle them to the full panoply of rights required in a criminal prosecution.

Petitioners claim that their right to due process was violated because the 1400 Review procedures did not in every case include an in–person hearing before the Board, notice of adverse information used to set the exceptional sentence, or representation by counsel.

In *In re Sinka*, 92 Wn.2d 555, 599 P.2d 1275 (1979), we decided what due process protections were required when the Board of Prison Terms and Paroles set an exceptional sentence. We observed that the Board of Prison Terms and Paroles was exempt from the Washington administrative procedure act under RCW 34.04.150.[19] This exemption applied to all Parole Board actions, including

---

[17]*See* RCW 9.95.009(2); exhibit 8.

[18]Exhibit 11.

[19]*In re Sinka*, 92 Wn.2d 555, 560, 599 P.2d 1275 (1979).

minimum term decisions and redeterminations.[20] We perceive no valid reason why this exemption should not apply to Indeterminate Sentencing Review Board decisions as well as to decisions of its predecessor, the Parole Board, even though the Legislature apparently overlooked explicitly noting the SRA's redesignation of the Board of Prison Terms and Paroles as the Indeterminate Sentencing Review Board in RCW 34.04.150.[21]

■■ In *Sinka*, we declared the essentials of due process to be a "'notice and an opportunity to be heard or defend before a competent tribunal in an orderly proceeding adapted to the nature of the case.'"[22] We also emphasized, however, that due process is flexible and calls for procedural protections that the given situation demands.[23] In applying these principles to Parole Board proceedings, we held in *Sinka* that due process requirements at the setting of minimum terms must include advisement of adverse information in the inmate's file and the opportunity to rebut or to explain adverse file information.[24] We similarly hold here that these requirements should also apply when the Indeterminate Sentencing Review Board sets and redetermines minimum terms.[25]

It is important to bear in mind, however, that setting a minimum term is not part of the criminal prosecution; the

---

[20]*See* RCW 34.04.150.

[21]*See Dawson v. Hearing Comm.*, 92 Wn.2d 391, 395–96, 597 P.2d 1353 (1979).

[22]*Sinka*, at 565, citing *In re Hendrickson*, 12 Wn.2d 600, 606, 123 P.2d 322 (1942).

[23]*Sinka*, at 565.

[24]*Sinka*, at 568–69.

[25]*See* RCW 9.95.009(2).

full panoply of rights due a criminal defendant in a criminal case does not apply to the setting of a minimum term.[26] As such, contrary to the petitioners' contention, the presence of counsel is not required in the setting and redetermination of minimum terms. As the United States Supreme Court recently held, "[s]tates have no obligation to provide [postconviction] relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (Citations omitted.)[27] More specifically, with respect to parole and probation hearings, the United States Supreme Court held that there is no constitutional requirement that indigent prisoners must be provided with counsel; however, exceptions are available on a case–by–case basis.[28] In *Arment v. Henry,* 98 Wn.2d 775, 778, 658 P.2d 663 (1983), we recognized this holding and declined to adopt a per se rule mandating the right of counsel at disciplinary proceedings before the Parole Board. We similarly conclude that inmates have no right to an attorney during the type of postconviction proceeding involved herein, namely, a minimum term redetermination by the Indeterminate Sentencing Review Board.

With regard to the due process requirements we held necessary in *Sinka,* that is, notice of adverse file information and an opportunity to rebut that information, we conclude that the Board generally complied with those requirements during the 1400 Review Project. The Board originally provided petitioners herein with the opportunity to review the information in their files and rebut contested facts either before or during their initial in–person admissions meeting. After their minimum terms were set at that

---

[26]*Sinka,* at 566.

[27]*Pennsylvania v. Finley,* 481 U.S. 551, 95 L. Ed. 2d 539, 547, 107 S. Ct. 1990 (1987).

[28]*Gagnon v. Scarpelli,* 411 U.S. 778, 788–89, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973).

meeting, inmates were allowed to challenge their terms pursuant to Board Rule 2.130. Specifically, they were provided with a form on which to comment about adverse information used to set their minimum terms. If these comments provided information that indicated a factual error on which the Board relied in initially setting a minimum term, the Board then scheduled an in–person hearing in order to resolve the conflict before redetermining the minimum term. While those redeterminations were conducted without an in–person hearing, an inmate was still given the opportunity to point out errors after receiving the Board's reasons and decisions made pursuant to the 1400 Review. If such errors were unresolved and could not be substantiated in an inmate's favor, an in–person hearing would be held.

Petitioner Sanchez wrote several letters challenging the Board's redetermination of her minimum term and sought an in–person hearing before the Board. Under the facts reflected by the record herein, the Board did not err in concluding that her allegations were general and uncorroborated and did not warrant a second in–person hearing.

In summary, the 1400 Review Project accorded the inmates herein provided appropriate due process protections.

ISSUE THREE.

CONCLUSION. Petitioners' equal protection rights were not violated by the 1986 amendments to the SRA transition statute (RCW 9.95.009(2)). The amendments to that statute simply clarified the 1984 version of the statute and the procedural protections afforded pre–SRA offenders sentenced by a trial court after July 1, 1986 need not be greater than those provided by the Board during its 1400 Reviews.

The equal protection clause requires that "persons similarly situated with respect to the legitimate purpose of the

law receive like treatment."[29] In seeking relief from personal restraint, petitioners must show that actual prejudice was created by the alleged equal protection violation.[30] In endeavoring to meet this burden, petitioners claim that they were treated more severely by the Board during the 1400 Review Project than offenders whose minimum terms were redetermined pursuant to the Obert Myers Review because of the new, explicit factors the Board was to rely on in setting durations of confinement during the 1400 Reviews as stated in the 1986 amendments to the transition statute (*i.e.*, considering the minimum term recommendations of the sentencing judge and prosecuting attorney as well as the different charging and disposition practices under the indeterminate sentencing system). Although the 1986 amendment does set forth additional factors for the Board to consider, there is no indication that these factors could not have also been properly considered by the Board when it was making decisions under the 1984 statute. As we have pointed out, the 1986 amendatory legislation basically clarified the very general language of the original transition statute.[31] Thus, there is no showing that the 1986 amendment created two classes of pre–SRA offenders or different methods of treatment of offenders.

Even if two pre–SRA offender classes had been created by the 1984 and 1986 versions of the transition statute, petitioners would have the heavy burden of showing that there is no reasonable basis for those classifications.[32] Classifications do not offend the equal protection clause just

[29]*Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978); *Herriott v. Seattle*, 81 Wn.2d 48, 60, 500 P.2d 101 (1972).

[30]*See In re Williams*, 111 Wn.2d 353, 364, 759 P.2d 436 (1988).

[31]*Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 510, 730 P.2d 1327 (1986).

[32]*Petersen v. State*, 100 Wn.2d 421, 671 P.2d 230 (1983); *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 836, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979 (1980).

because they result in some inequality if there is a reasonable basis therefor.[33]

■■■ We examine the statutory classification created by the 1986 amendment under the rational basis test since it involved neither a fundamental right nor a suspect classification.[34] Petitioners' status as inmates in legal custody after a judgment and sentence leaves them with a conditional liberty interest.[35] A statutory classification that affects such an interest is subject to examination under the rational basis test.[36] Under this test, a statute is set aside only if it is based on reasons unrelated to the pursuit of a legitimate state purpose.[37] The presumption of rationality can only be overcome by a clear showing of arbitrariness and irrationality.[38] Petitioners have failed to show that the 1986 amendment to the transition statute was either arbitrary or irrational. The Legislature simply specified important criteria for the Board to consider in an effort to clarify the redetermination process. This specification and clarification was entirely rational and did not violate equal protection guaranties.

Petitioners further claim that the transition statute violates their equal protection rights because under it they are treated differently from yet a third set of pre–SRA offenders—those who, pursuant to RCW 9.95.011, have had their minimum terms set by a superior court judge after July 1, 1986. This third classification is comprised of felons who

---

[33]*State v. Persinger,* 62 Wn.2d 362, 368, 382 P.2d 497 (1963), *cert. denied,* 376 U.S. 187 (1964); *State v. Kitsap Cy. Bank,* 10 Wn.2d 520, 527, 117 P.2d 228 (1941).

[34]*Petersen,* at 444–45.

[35]*In re Mayner,* 107 Wn.2d 512, 517–19, 730 P.2d 1321 (1986).

[36]*Mayner,* at 517–19.

[37]*Petersen,* at 444; *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978).

[38]*Johnson v. Tradewell Stores, Inc.,* 95 Wn.2d 739, 744, 630 P.2d 441 (1981).

committed their crimes before July 1, 1984 but who were not convicted and sentenced until after July 1, 1986. It is the petitioners' argument that felons receiving a minimum term from a superior court are afforded the protections of an evidentiary hearing and representation by counsel, whereas pre–SRA offenders sentenced during the 1400 and Obert Myers Reviews received no such protections.

To support this argument, petitioners look to two SRA statutes, RCW 9.94A.110 ("Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing.") and RCW 9.94A.370(2) ("Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point."). These statutes apply only to court sentencing of those convicted under the SRA. The statute requiring superior courts to set minimum terms of pre–SRA offenders, RCW 9.95.011, contains no references to these SRA statutes, but requires the court, like the Board, to attempt to fix minimum terms *reasonably consistent* with the SRA. Nothing in the statute requires a court to follow SRA sentencing procedures. Nowhere does statutory law indicate that before an indeterminate minimum term is set by a superior court a separate evidentiary hearing must be held and counsel provided. Indeed, as the foregoing discussion of previous issues demonstrates, these rights need not be provided since the setting of a minimum term is not part of a criminal prosecution and the full panoply of rights due a defendant at those proceedings does not apply to minimum term settings. The fact that minimum terms of pre–SRA offenders convicted and sentenced after July 1986 will be set by a superior court under RCW 9.95.011 does not violate petitioners' equal protection rights.

We thus conclude that petitioners have failed to show that their right to equal protection has been violated. The amendments of the original transition statute were rational ones and the resulting statutory language does not offend equal protection guaranties.

The relief requested by the personal restraint petition of petitioner Sanchez is hereby denied.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.