**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 85900-5-I |
| DAVID WAYNE EVANS, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

MANN, J. — In this personal restraint petition (PRP), David Evans asks this court to remand this matter to the Indeterminate Sentence Review Board (ISRB) and direct the ISRB to release Evans or provide him with a new hearing. Evans argues that the ISRB abused its discretion when it denied his release by (1) not basing its decision on a risk assessment tool, (2) basing its decision on the future prospect of additional evaluation, and (3) making a factual error.

Evans has not established that the ISRB abused its discretion. As a result, we deny Evans's PRP.

I

Between May 2001 and June 2004, Evans, who coached a children's soccer team, sexually assaulted two young male children, ages 11 and 12, who were on the team. Evans pleaded guilty to rape of a child in the first degree (count I), child

molestation in the first degree (count II), and communication with a minor for immoral purposes (count III). Evans was sentenced to confinement for 144 months to life for count I, 89 months to life for count II, and 365 days for count III.

In 1997, Evans was charged with child molestation in the first degree and child molestation in the second degree based on allegations that Evans sexually assaulted a "familial male minor" when the child was between 10 and 13. Evans was acquitted on both counts. But Evans has since admitted to sexually abusing two familial male minors.

Since 2015, the ISRB has held five hearings under RCW 9.95.420 (.420 hearing) over Evans's release. Each time, the ISRB denied release.

At the time of Evans's first .420 hearing in 2015, Evans had not completed a Sex Offender Treatment and Assessment Program (SOTAP). Evans's SOTAP therapist testified that Evans was "further behind in dealing with his sexual deviancy than he was at the time of intake" and that it was hard to know when Evans was telling the truth. The therapist also testified that Evans was not forthcoming about the number of unadjudicated victims and had to be confronted with letters from family members before admitting to sexually assaulting familial male minors.

The ISRB also considered the End of Sentence Review Committee's (ESRC) report. Although Evans's actuarial risk scores were "low" and "low/moderate," the ESRC recommended a level III risk level classification for Evans because he used a position of trust to gain access to his victims and demonstrated a pattern of behavior that increases the risk for sexual reoffense. A level III risk level classification means that there is a high risk of sexual reoffense within the community at large. The ESRC

also referred Evans to the ESRC Sexually Violent Predator (SVP) Subcommittee to determine whether a forensic psychological evaluation should be ordered to determine whether he meets civil commitment criteria under RCW 71.09.020.

At Evans's second .420 hearing in 2016, the ISRB again denied release and added 36 months to his minimum term. While Evans had completed SOTAP, he made minimal progress. Evans's SOTAP therapist explained, Evans's "pursuit of deviant sexual arousal and behavior appears to be constant and not impacted even by time in prison. Furthermore, Mr. Evans works diligently to keep his behavior covert." The ISRB learned that Evans received a general infraction for "unauthorized display of affection" and Evans admitted that he had engaged in sexual talk with a 26-year-old inmate. This investigation was not disclosed to the ISRB at Evans's 2015 .420 hearing despite Evans's awareness of the accusation. The ISRB recommended that Evans participate in Thinking for a Change or other programming to help him be more open and honest and then reapply for SOTAP.

At Evans's third .420 hearing in 2019, the ISRB denied release and added 36 months to Evans's minimum term. Again, the ISRB recommended that Evans participate in SOTAP for a second time. The ISRB found that Evans "shows little remorse . . . minimizes his behavior and verbalizes little insight into his behavior." In addition, Evans "has at least four minor male victims yet struggled to admit he had a deviant sexual attraction to them."[1]

---

[1] Following Evans's third .420 hearing, Evans filed a PRP which was denied by Division Two of this court. In re Pers. Restraint of Evans, No. 54254-4-II, slip op. at 12 (Wash. Ct. App. Mar. 16, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054254-4-II%20Unpublished%20Opinion.pdf.

In 2021, the ISRB agreed to see Evans early due to his completion of SOTAP and held Evans's fourth .420 hearing. The SOTAP specialist testified that Evans did very well in treatment. The ISRB denied release and added six months to Evans's minimum term, the ISRB also recommended that Evans undergo a psychological evaluation for general sexual recidivism before his next hearing.

Evans's fifth .420 hearing—the one at issue here—occurred in May 2022. Prior to the hearing, Evans underwent a General Sexual Recidivism Evaluation (GSRE) with Dr. Lisa Robtoy. In Dr. Robtoy's opinion, Evans was assessed to be moderate, if not high moderate risk for general sexual recidivism and was a questionable candidate for release.

The ESRC found that the level III recommendation for Evans remained unchanged. Evans's level III classification has remained unchanged since 2015. The ESRC also recommended that Evans be reviewed for civil commitment by the SVP subcommittee if the ISRB were to recommend release. The ESRC has made this recommendation since 2015.

The ISRB concluded that "[b]ased on the burden of proof set out in RCW 9.95.420 and the totality of evidence and information provided to the Board, the Board does find by a preponderance of the evidence that Mr. Evans is more likely than not to commit a sex offense if released on conditions." Consistent with RCW 9.95.420, the ISRB added 36 months to his minimum term.

In its reasons for denying release, the ISRB listed that Evans was a level III notification risk and that the ESRC had referred Evans to the SVP subcommittee, only the highest risk of all sex offenders, less than two percent, are reviewed by the SVP

subcommittee and recommended for further evaluation. The ISRB also referenced Dr. Robtoy's evaluation and opinion that "Evans presents a higher risk for general sexual recidivism than is reflected on the risk assessment tools" and "Evans is probably closer to moderate, if not high moderate risk for sexual recidivism." Dr. Robtoy also opined that Evans "is a questionable candidate for release and his release would create public safety concerns, particularly for minor males." The ISRB also found:

> Mr. Evans fails to understand that having physical contact with his minor grandchildren creates a high-risk situation for him, creating serious questions about his internalization of sex offender treatment concepts designed to mitigate his risk for a future sex offense, particularly as it relates to having physical contact with minors.

Evans challenges the ISRB's decision.

II

To succeed on a challenge of an ISRB decision, a petitioner must show that he is under unlawful restraint. In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (citing RAP 16.4(b), (c)).

We review ISRB decisions denying release and setting a new minimum term for an abuse of discretion. In re Pers. Restraint of Dyer, 175 Wn.2d 186, 196, 283 P.3d 1103 (2012). We give the ISRB decision substantial deference, as we are "not a super [ISRB] and will not interfere with a[n ISRB] determination in this area unless the [ISRB] is first shown to have abused its discretion in setting [an offender's] discretionary minimum term. In short, the courts will not substitute their discretion for that of the [ISRB]." Dyer, 175 Wn.2d at 196 (quoting In re Pers. Restraint of Whitesel, 111 Wn.2d 621, 628, 763 P.2d 199 (1988)).

The ISRB abuses its discretion when it "fails to follow its own procedural rules for parolability hearings" or bases its decision on speculation and conjecture only. In re Pers. Restraint of Dyer, 157 Wn.2d 358, 363, 369, 139 P.3d 320 (2006). The petitioner has the burden to prove the ISRB abused its discretion. In re Pers. Restraint of Addleman, 151 Wn.2d 769, 774, 92 P.3d 221 (2004).

RCW 9.95.420(3)(a) states that the ISRB shall:

> determine whether it is more likely than not that the offender will engage in sex offenses if released on conditions to be set by the [ISRB]. . . . The [ISRB] shall order the offender released, under such affirmative and other conditions as the [ISRB] determines appropriate, unless the [ISRB] determines by a preponderance of the evidence that, despite such conditions, it is more likely than not that the offender will commit sex offenses if released.

In making its determination, the ISRB must rely on the ESRC report. See WAC 381-90-050(1)-(2). The ESRC report:

> may include but is not limited to . . . psychiatric or psychological reports, such as IQ appraisals, personality inventories, actuarial risk assessments and sexual history polygraphs; . . . [b]ehavioral details of the crime(s) of conviction, . . . [and] [t]he department's risk management level and the sex offender notification level.

WAC 381-90-050(2) (emphasis added). The ESRC "shall classify as risk level III those offenders whose risk assessments indicate they are at a high risk to sexually reoffend within the community at large." RCW 72.09.345(6).

The ISRB may consider additional factors including: evidence of an offender's continuing intent or propensity to engage in sex offenses, end of sentence review determination based on actuarial assessments identifying risk to sexually reoffend, and psychological evaluation including actuarial assessment information identifying risk to engage in criminal behavior. WAC 381-90-150(3)(c), (e), and (f). The ISRB may also

consider "[o]ther pertinent information." WAC 381-90-050(4)(e). "All relevant information shall be admissible." WAC 381-90-140.

III

Evans argues that the ISRB abused its discretion when it denied his release. We disagree.

Evans first asserts that the ISRB's decision departs from accepted methods of risk prediction. He argues that under RCW 9.95.420(1)(a), the ISRB was required to accept the results of a risk assessment incorporating accepted methodology.

RCW 9.95.420(1)(a) states:

> as part of the end of sentence review process . . . the department shall conduct, and the offender shall participate in, an examination of the offender, incorporating methodologies that are recognized by experts in the prediction of sexual dangerousness, and including a prediction of the probability that the offender will engage in sex offenses if released.

As our Supreme Court has explained, "[t]he actuarial approach evaluates a limited set of predictors and then combines these variables using a predetermined, numerical weighting system to determine future risk of reoffense which may be adjusted (or not) by expert evaluators considering potentially important factors not included in the actuarial measure." In re Det. of Thorell, 149 Wn.2d 724, 753, 72 P.3d 708 (2003) (emphasis added).

As part of Evans's GSRE, Dr. Robtoy administered the Static-99R and the Sex Offender Treatment and Intervention Progress Scale (SOTIPS). Evans scored in the low risk range on the Static-99R and the moderate range on the SOTIPS. Even so, Dr. Robtoy explained:

The Static 99R is loaded with static information, that is, information that will not change over time, despite efforts at treatment and/or rehabilitation. Scores are derived predominately from offense behavior, either charges or convictions. Considering Mr. Evans has been implicated in multiple other sexual offenses outside of the 1996 charges for molesting [a familial male minor], and the instant offenses, his score of one (lower risk than most sex offenders) is probably an underestimate.

As for SOTIPS, Dr. Robtoy explained that it is "based much more on dynamic information such as treatment participation, current attitudes about sex, sexual interests, and cooperation with supervision" but is largely based on an individual's self-report.

Accordingly, Dr. Robtoy opined:

Unfortunately, Mr. Evans' history suggests he is not truthful about his involvement in sexual offending until he is faced with evidence he cannot deny. For example, he only admitted to molesting [familial male minors] after a letter was intercepted by the mail room and submitted to his SOTAP counselors, making his self-report during the SOTIPS questionable, and probably an underestimate about his current functioning, treatment needs, and risk for recidivism.

Dr. Robtoy concluded:

In my opinion, Mr. Evans presents a higher risk for general sexual recidivism than is reflected on the risk assessment tools noted above. While he appears to have made progress, particularly during his most recent involvement in the SOTAP, Mr. Evans is probably closer to moderate, if not high moderate risk for sexual recidivism.

Dr. Robtoy was not required to accept the results of the actuarial models and, instead, could consider "potentially important factors" and adjust the determination of future risk. Thorell, 149 Wn.2d at 753. Dr. Robtoy did so here and explained the reasons behind the adjustments.

The ESRC has also departed from these statistical models since 2015 and has consistently recommended a level III risk classification for Evans. As the ESRC explains, actuarial instruments are used to establish a recommended risk level

classification, however, the ESRC "may elect to depart from the initial risk level score if special circumstances warrant. Objective risk instruments include a number of factors relevant to re-offending, but do not consider unique circumstances or unusual characteristics of offenders." Further, "departures give the [ESRC] the ability to incorporate a breadth of information about the individual under review and exercise its judgment and expertise." Factors not otherwise captured by the actuarial risk instruments that the ESRC considers include a pattern of behavior that increases risk for sexual reoffense and whether the offender used a position of trust to gain access to victims. Both factors resulted in the ESRC recommending a risk level classification of III for Evans and maintaining that recommendation in 2022.

The ISRB did not solely rely on Dr. Robtoy's conclusions, it also relied on the ESRC report, which it was required to consider under WAC 381-90-050(1)(2). And the ISRB can exercise its discretion to determine the evidentiary weight of the actuarial tests as a predictive tool in this setting. See Thorell, 149 Wn.2d at 756.

Evans next argues that the evidence relied on by the ISRB was insufficient to support the conclusion that he is likely to reoffend. Evans relies on In re Personal Restraint of Brashear, 6 Wn. App. 2d 279, 430 P.3d 710 (2018).

Brashear was convicted of first degree murder, first degree assault, and first degree burglary for crimes she committed at 15 years old. Brashear, 6 Wn. App. 2d at 281. After serving 20 years of confinement, Brashear petitioned the ISRB for early release under RCW 9.94.730. Brashear, 6 Wn. App. 2d at 281. Early release under RCW 9.94.730(3) is presumptive unless the ISRB determines that, despite conditions, it is more likely than not that a person will reoffend. Brashear, 6 Wn. App. 2d at 287.

Brashear participated in a psychological evaluation which concluded that Brashear was at a low, or even a very low, risk to reoffend. Brashear, 6 Wn. App. 2d at 283-84, n.4. The ISRB denied Brashear's petition for release. Brashear, 6 Wn. App. 2d at 285.

This court reversed and held that the ISRB abused its discretion because:

> [r]ather than focusing on the statutory presumption of release, her awareness of her crimes, her changed behavior, her assessed low risk to reoffend, and appropriate release conditions, the ISRB relied on Brashear's underlying crimes, the impact of those crimes, and the small portion of her sentence served in denying her petition.

Brashear, 6 Wn. App. 2d at 288.

Evans's case is distinguishable. Evans committed his crimes, both adjudicated and unadjudicated, as an adult; he petitioned for release under RCW 9.95.420; the ESRC determined that Evans presented a high risk of sexual reoffense and recommended referral to the SVP subcommittee for additional evaluation; Dr. Robtoy opined that Evans was moderate, if not high moderate risk for reoffense; and Evans failed to understand why having physical contact with his minor grandchildren creates a high-risk situation for him.[2] The ISRB focused on its statutory mandate to consider whether Evans was more likely than not to reoffend.

Evans next points to two other factors the ISRB considered in denying his release. First, Evans asserts that the fact that a referral was made to conduct a SVP evaluation does not make it more likely than not that he would commit a future sexual offense. But in making its decision, the ISRB must rely on the ESRC report. See WAC 381-90-050(1)-(2). And in Evans's case, the ESRC recommended that the ISRB submit

---

[2] Evans also admitted to sexual attraction toward minor males and having about one deviant thought a day to Dr. Robtoy. A fact also relied on by the ISRB.

a request to evaluate whether Evans meets civil commitment criteria, a recommendation that is made only for the highest risk sex offenders. The ISRB was required to consider this.

Second, Evans challenges the ISRB's conclusion that "Mr. Evans fails to understand that having physical contact with his minor grandchildren creates a high-risk situation for him, creating serious questions about his internalization of sex offender treatment concepts designed to mitigate his risk for a future sex offense, particularly as it relates to having physical contact with minors." Evans asserts this is factually incorrect because his grandchildren are not minors.

Evans includes a declaration that purports to include the ages of his grandchildren. But Evans's declaration was submitted after the ISRB made its decision.[3] And the declaration itself states that at least one, if not two, of his grandchildren was a minor at the time the ISRB made its decision. Evans admitted to sexual attraction toward minor males.

Finally, Evans asserts that the ISRB completely failed to acknowledge several positive factors.[4] Contrary to Evans's argument, the ISRB did note that Evans is not a management issue and has not incurred a serious infraction since 2011, and that he is participating in CD treatment.[5] The ISRB also noted that Evans could describe his high risks and interventions.

_____

[3] The ISRB's decision is dated May 23, 2022. Evans's declaration is dated January 6, 2023.
[4] Evans cites the 2019 decision of the ISRB and the testimony his classification counselor gave during his third .420 hearing.
[5] The record before us does not specify what "CD treatment" is, however, "CD" often stands for "chemical dependency." See In re Pers. Restraint of Schley, 197 Wn. App. 892, 865, 392 P.3d 1099 (2017) ("[a]ny major infraction that causes a change in custody level or the violation of the condition(s) outlined in the CD [chemical dependency] Treatment Participation Requirements").

No. 85900-5-I/12

Evans has not established that the ISRB abused its discretion.  As a result, we deny Evans's PRP.

Mann, J.

WE CONCUR:

Coburn, J.        Dwyer, J.

-12-