**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of:<br><br>LUIS ANDRE PEREZ,<br><br>                Petitioner. | No. 84376-1-I (consolidated with No. 84419-9-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Luis Perez petitions this court for relief from personal restraint after the Indeterminate Sentence Review Board (ISRB) revoked his community custody and imposed a new minimum sentence of 24 months. Perez argues he is unlawfully restrained because (1) the ISRB abused its discretion in determining Perez violated community custody by a preponderance of the evidence, (2) outrageous government conduct violated his due process rights, and (3) newly discovered material evidence requires a reference hearing. We deny Perez's personal restraint petition (PRP).

I

In 2011, a jury convicted Perez of second degree assault, unlawful imprisonment, and two counts of rape in the second degree. Perez also pleaded guilty to possession with the intent to manufacture or deliver oxycodone. In 2012, Perez was sentenced to an indeterminate sentence of 147 months to life.

Perez was released to community custody supervision on March 17, 2021. According to the terms of release, Perez was prohibited from various activities including owning or possessing a firearm, consuming alcohol, using or possessing drugs, and accessing or possessing sexually explicit materials. Additionally, Perez could not engage in a romantic relationship without prior approval from his community corrections officer (CCO); nor could he have an internet capable device without meeting with his CCO and signing the required use agreement.

On July 21, 2021, Perez admitted to violating community custody conditions by consuming cocaine.

On September 30, 2021, Perez notified his CCO that he had consumed alcohol and was arrested for driving under the influence.

In November 2021, the CCO discovered Perez was wanted for multiple crimes stemming from incidents involving Andrea Porter, a former Department of Corrections (DOC) officer who Perez was in a relationship with. Porter told an Airway Heights police officer that she and Perez began dating in June 2021. Porter at first reported that Perez stole her credit cards and possibly her handgun. In later interviews, Porter said that Perez punched and strangled her and held her captive, and that Perez had beaten her unconscious approximately every three to four days since the start of their relationship. The officer observed severe bruising on Porter's face along with bruises on her thighs, bicep, eyes, and neck. Consequently, Perez was charged with second degree assault (DV), unlawful imprisonment, second degree theft (DV), second degree identity theft (DV), and malicious mischief.

On December 10, 2021, the ISRB issued a notice of violation, specifying 18 violations of conditions of supervision. The violation/revocation hearing took place on January 13, 2022, during which the ISRB reviewed the remaining 11 violations and heard testimony from Perez and CCO Jenna Knox.[1]

Perez testified that shortly after his release he was contacted by Porter on TikTok, at which time he discovered she was a correctional officer at Airway Heights Corrections Center. Perez said Porter cried to him about hating her job and that she was fighting cancer and needed someone to talk to. Perez at first resisted but when she threatened suicide, he relented. Porter instructed Perez to get another phone so they would not get caught. CCO Knox confirmed that Porter was a DOC employee until her resignation in October 2021.

Perez described the relationship as toxic and Porter as having anxiety, depression, and being addicted to cocaine and alcohol. Perez said he felt "crazy pressure" and "trapped" that if he told anyone about the circumstances she would commit suicide. Perez explained that he absconded because once he told Porter he was going back to jail after getting arrested for driving under the influence, Porter threatened suicide. Perez said the situation damaged him "mentally and emotionally." Perez also said, "the only time I got reintroduced to alcohol or . . . cocaine was because of [Porter]."

Knox testified that despite some positives such as being employed and enrolling in Sex Offense Treatment and Assessment Programs, Perez was leading a separate

---

[1] Preliminarily, seven violations for failing to obey all laws were dismissed without prejudice at Perez's request.

life, was deceptive, and overall was adjusting poorly. Knox expressed concern over the undisclosed relationship with Porter, particularly given the drug and alcohol use and the nature of the pending charges along with the fact Perez likely traveled to Spokane, where Porter lived, to facilitate the relationship.

As for Porter, Knox stated that Perez had multiple opportunities to speak up and ask for help and pointed to his intake documents which stated expressly that sexual contact with DOC employees is a violation and nonconsensual. Knox noted that after the incidents involving Porter, Perez appeared to be using dating websites to seek out other women, allegedly using Porter's credit card to pay for those services. CCO Knox recommended revocation.

Perez pleaded guilty to the following violations, with explanation for violations 4, 7, and 16:

1. Consuming alcohol
4. Absconding supervision by failing to report on or about 10/08/2021
5. Failing to be available for urinalysis testing by absconding supervision
7. Engaging in a romantic relationship without prior permission from CCO
13. Changing residence without prior approval of CCO
16. Possession of an unapproved device, smartphone
17. Possession of sexually explicit material

Perez pleaded not guilty to the following violations:

3. Failure to submit urinalysis testing by submitting a dilute sample
6. Failing to abide by the DOC social media and electronic device monitoring agreement by utilizing social media, TikTok and Instagram, without prior approval
15. Failing to enter and abide by chemical dependency treatment

The ISRB found Perez guilty on all violations except for violation 6. The ISRB determined that:

• Mr. Perez is participating in high-risk behaviors engaging in an unapproved relationship and using substances/alcohol.
• He has demonstrated little ability to comply with the basic expectation of Supervision by absconding.
• He has incurred numerous new criminal law charges.
• He is not amenable for supervision and presents a danger to the community.

The ISRB concluded that Perez violated the conditions of release and that, in the best interest of the public and Perez, an order of revocation be issued and he be returned to jail. On January 20, 2022, the ISRB set a new minimum sentence of 24 months.

Perez submitted a PRP to Division Three of this court on August 15, 2022. Perez also submitted a PRP to the Washington State Supreme Court. The Supreme Court transferred the PRP to this court where the two PRPs were consolidated for our review.[2]

II

To succeed on a challenge of an ISRB decision, a petitioner must show that he is under unlawful restraint. In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (citing RAP 16.4(b), (c)). Perez argues that the ISRB abused its discretion in revoking his release. If true, this abuse of discretion would render Perez's continued incarceration unlawful.

ISRB parole decisions are reviewed for an abuse of discretion. In re Pers. Restraint of Dyer, 175 Wn.2d 186, 196, 283 P.3d 1103 (2012). Because the offender has no right to parole, the decision is within the ISRB's discretion. Dyer, 175 Wn.2d at 196-97. The ISRB decision is afforded substantial deference and "courts will not

---

[2] See No. 84419-9-I.

-5-

substitute their discretion for that of the [ISRB]." Dyer, 175 Wn.2d at 196 (quoting In re Pers. Restraint of Whitesel, 111 Wn.2d 621, 628, 763 P.2d 199 (1988)).

The ISRB abuses its discretion when it "fails to follow its own procedural rules" for community custody hearings or bases its decision on speculation and conjecture only. In re Pers. Restraint of Dyer, 157 Wn.2d 358, 363, 139 P.3d 320 (2006). The petitioner has the burden to prove the ISRB abused its discretion. In re Pers. Restraint of Addleman, 151 Wn.2d 769, 774, 92 P.3d 221 (2004).

A

Perez argues he should not be held responsible for violating the conditions of his community custody, and the violations were not proved by a preponderance of the evidence because he was coerced and pressured into those violations by Porter. We disagree.

Under RCW 9.95.435(1), if a conditionally released sex offender "violates any condition or requirement of community custody, the [ISRB] may transfer the offender to a more restrictive confinement status to serve up to the remaining portion of the sentence." The offender is entitled to a hearing before the ISRB, unless waived. RCW 9.95.435(2), (4)(c). Violations of conditions of community custody must be proven by a preponderance of the evidence. WAC 381-100-290(1). "Preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true." State v. Arredondo, 188 Wn.2d 244, 257, 394 P.3d 348 (2017). For sex offenders, if the ISRB concludes the violations were proven by a preponderance of the evidence then the ISRB may revoke the release to community custody. RCW 9.95.435(2); WAC 381-100-290.

There is little dispute that the preponderance standard was met for all of the ISRB's nine guilty findings. First, "a defendant who pleads guilty admits factual and legal guilt for the charged crime. . . . The guilty plea thus provides a sufficient and independent factual basis for conviction and punishment." In re Pers. Restraint of Reise, 146 Wn. App. 772, 782, 192 P.3d 949 (2008). Perez pleaded guilty to 7 of the 18 original alleged violations.

Further, a preponderance of evidence supported the two violations the ISRB found Perez guilty of that he had not pleaded to. The ISRB found Perez guilty of allegation 3—failure to submit to urinalysis by submitting a diluted sample, based on the testimony of his CCO and the laboratory report indicating dilution. The ISRB found Perez guilty of allegation 15—failing to abide by chemical dependency treatment—based on the evidence that Perez did not attend scheduled treatment sessions in September and October 2021. Perez presented no evidence to undermine these factual determinations. Indeed, nowhere in his briefing does Perez address the urinalysis and treatment violations.

Perez instead argues that despite the violations, he should not be held responsible because he was coerced and pressured into the violations by Porter. Perez argues that because of Porter's conduct, the ISRB could not find his conduct was willful. But nothing in RCW 9.95.435 requires the offender's conduct to be willful. Rather, it authorizes revocation once it is established that the offender "violate[d] any condition or requirement of community custody." RCW 9.95.435(1).

State v. McCormick, 166 Wn.2d 689, 703 n.6, 213 P.3d 32 (2009) is instructive. McCormick dealt with the analogous situation of a revocation of a probationary

sentence imposed under the special sex offender sentencing alternative, RCW 9.94A.670.  A condition of McCormick's suspended sentence required that he not frequent areas where minor children were known to congregate and McCormick argued the State had to prove he willfully violated the condition.  166 Wn.2d at 697.  Our Supreme Court held that due process did not require the State to prove a willful violation before revoking given the strong interest in protecting the public and McCormick's diminished rights as a convicted sex offender serving a suspended sentence.  McCormick, 166 Wn.2d at 705.  The court further explained that even if there were a willfulness requirement, it would not apply when the violation creates a threat to public safety.  McCormick, 166 Wn.2d at 704-05.

Ignoring the holding of McCormick, Perez focuses instead on footnote six where the court posited a hypothetical where the offender violated a condition against his will:

> This does not mean the State does not have to prove McCormick took a volitional act.  If McCormick were in an area where minors are known to congregate against his will, then it presents a situation different from the one presented here and may involve a different analysis.

166 Wn.2d at 703, n.6.  But beyond the hypothetical posed in footnote six, Perez offers no further support for his assertion that the ISRB was required to find his conduct willful.

The ISRB's findings were supported by a preponderance of the evidence, thus the ISRB did not abuse its discretion in revoking community custody.

## B

Perez argues Porter engaged in outrageous government conduct in violation of due process.  We disagree.

The defense of outrageous government conduct is closely related to the subjective defense of entrapment as they both raise issues of due process principles. See State v. Lively, 130 Wn.2d 1, 19, 921 P.2d 1035, 1044 (1996); State v. Markwart, 182 Wn. App. 335, 348, 329 P.3d 108 (2014).  Unlike entrapment, "outrageous conduct is founded on the principle that the conduct of law enforcement officers and informants may be 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'"  Lively, 130 Wn.2d at 19 (quoting United States v. Russell, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973)).  "[T]he conduct must be so shocking that it violates fundamental fairness."  Lively, 130 Wn.2d at 19.  "Whether the State has engaged in outrageous conduct is a matter of law."  Lively, 130 Wn.2d at 19.  "[D]ismissal based on outrageous conduct seems to be limited to the acts of law enforcement officers and informants."  State v. Hand, 199 Wn. App. 887, 900, 401 P.3d 367 (2017), aff'd, 192 Wn.2d 289, 429 P.3d 502 (2018).

Porter was not a law enforcement officer investigating Perez nor was she operating as an informant as part of an investigation.  Instead, Perez and Porter were in a personal romantic relationship in violation of the conditions and requirements of Perez's community custody.  Perez provides no authority that the defense of outrageous conduct applies in this context.

Because the PRP stems from an ISRB hearing and Porter was not investigating Perez nor was she an informant, there was no outrageous government conduct in violation of Perez's due process right.

III

Perez argues that if this court cannot decide the PRP solely on the record, a hearing on the merits is needed so he may present newly discovered material evidence.[3]

The ISRB's revocation decision was supported by a preponderance of the evidence, this court affords that decision substantial deference, and Perez failed to show the ISRB abused its discretion.

Because we can decide the PRP solely on the record, a reference hearing is unnecessary.

We deny Perez's PRP.

_Mann, J._

WE CONCUR:

_Díaz, J._          _Bowman, J._

---

[3] In addition to the PRP, Perez has moved to depose Porter, for an order directing the DOC to produce the audio recording of the hearing under RAP 16.4(c)(3) and to incorporate newfound evidence in a reference hearing. These motions are denied.